639 A.2d 1302

**PENNYPACK WOODS HOME OWNERSHIP
ASSOCIATION, Appellant,**

v.

**BOARD OF REVISION OF TAXES and City of Philadelphia
and School District of Philadelphia.**

Commonwealth Court of Pennsylvania.

Argued Feb. 1, 1994.

Decided March 30, 1994.

Kathleen Herzog Larkin, for appellant.

John D. Christmas, Asst. City Sol., for appellees.

Before DOYLE, McGINLEY, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

Pennypack Woods Home Ownership Association (Pennypack), a nonprofit housing cooperative, appeals from the February 19, 1992 order of the Court of Common Pleas of Philadelphia County (trial court) setting the real estate tax assessment of its 1000 unit housing complex at 8724 Crispin Street at $4,256,000.00 for the 1990 tax year and successive years, based on a market value of $13,300,000.00. The taxing authorities are the City of Philadelphia and the School District of Philadelphia. We affirm.

## ISSUES

There are three issues before us for review. The first issue is whether the trial court erred in not considering Pennypack's self-imposed restrictions on the income and transferability of ownership of its real estate. The second issue is whether the trial court erred in sanctioning the income capitalization approach used by the taxing authorities' expert to value the cooperative's northeast Philadelphia complex. The third issue is whether the trial court erred in concluding that the actual consideration paid for establishing membership rights in Pennypack was not germane to ascertaining the fair market value of the nonprofit housing cooperative.

Our scope of review in a tax assessment appeal is restricted to a determination of whether the trial court committed a clear error of law or abuse of discretion. Further, we must give the trial court's findings great weight. *Cedarbrook Realty, Inc. v. Cheltenham Township,* 148 Pa.Commonwealth Ct. 310, 611 A.2d 335, *petition for allowance of appeal denied,* 533 Pa. 637, 621 A.2d 582 (1992). In considering the weight to be given to various approaches to valuation, the trial court has discretion to determine which of the conflicting methods (cost, comparable sales or capitalized income) is the fairest and most reasonable for a particular property. *Walnut–Twelve Associates v. The Board of Revision of Taxes of the City of Philadelphia,* 131 Pa.Commonwealth Ct. 404, 570

A.2d 619, *petition for allowance of appeal denied,* 525 Pa. 652, 581 A.2d 577 (1990).

## FACTS

Incorporated in 1952, Pennypack is a nonprofit housing cooperative. Pennypack purchased the property from the United States government in 1952 for $3,214,655.00. Initially, its purpose was to provide affordable housing to veterans and defense workers. Pennypack satisfied its mortgage in 1984 and the property is presently unencumbered.

The property consists of 150 one-bedroom units, 600 two-bedroom units and 250 three-bedroom units. The tract also has six retail shops, administrative offices, a gymnasium, a maintenance shop, a swimming pool, tennis courts, basketball courts and a large open undeveloped triangular tract of land.

Pennypack regulates the transferability of its units. It also regulates the price of its units. The sale price of units which have not been upgraded or renovated ranges from $2,352.45 to $3,920.75, the same price that has been in effect for forty years. The sale price of renovated units ranges from $4,704.90 to $7,844.50. According to the undisputed testimony of Mrs. Frances Headman, a forty-one year resident of Pennypack, former member of its Board of Directors and former manager, the waiting period for smaller units is anywhere from five to ten years and up to twenty years for the larger three-bedroom units. (R.R. 386a.)

In 1990, the City determined that the market value of the subject property was $14,807,680.00 and Pennypack appealed the assessment based thereon to the Board of Revision of Taxes (Board). The Board denied its appeal and Pennypack appealed that denial to the trial court.

Relying primarily on the income approach, the trial court determined a market value of $13,300,000.00 and an assessed value of $4,256,000.00 for Pennypack. It relied on the income capitalization figures of the City's appraisal expert, Bernard Camins, whom the court found to be qualified and credible.

Mr. Camins considered sales of other large residential parcels, but relied more heavily on the income approach.

The court noted that the parties agreed that the cost approach was not relevant to valuation of the Pennypack property. The court also noted that it found it difficult to assess market value by the comparable sales approach since there are no other housing cooperatives like Pennypack.

Further, the trial court explained why it rejected Pennypack's assertion that the only valid way to determine market value was by ascertaining the actual consideration paid to establish membership rights. The court noted that the actual consideration paid was voluntarily kept at a far lower rate than any other residential real estate in northeast Philadelphia and concluded that "the fact that appellants have self imposed restrictions on the sale and transfer of its real estate cannot be binding upon the taxing authorities to keep real estate taxes arbitrarily low when such restrictions are in no way connected to or controlling of market conditions and valuation." Trial Court's February 19, 1992 Opinion at 4.

## DISCUSSION

The fair market value of real estate is measured by "the price which a purchaser, willing but not obligated to buy, would pay an owner, willing but not obligated to sell, *taking into consideration all uses to which the property is adapted and might, in reason be applied.*" *Brooks Building Tax Assessment Case*, 391 Pa. 94, 97, 137 A.2d 273, 274 (1958) (Emphasis added).

There are three approaches to valuation, which must be considered in conjunction with one another. They are the cost, comparable sales and income approaches. *Walnut–Twelve Associates.*

The parties disagree as to the market value, but neither party has disputed the trial court's application of the ratio of market value to assessed value.

## I. Pennypack's Self–Imposed Restrictions:

■ Under Pennypack's Articles of Incorporation and By–Laws,[1] a two-thirds vote of the members is required either for dissolution or for amendment of the By–Laws or Articles of Incorporation. In the event of dissolution, the assets would be distributed first to pay off the debts of the corporation and secondly as follows:

[B]y paying to those members of the Corporation, who ... vot[ed] against dissolution, the value of their equities and rights including the value of continued housing for themselves and their families under their Mutual Home Security Policy issued to them by the Corporation as evidenced by said policy. ...

(R.R. 855a–56a.)

According to the Mutual Home Security Policy, "[i]f the Member wishes to withdraw from membership in the Association ..., it shall have the first option to purchase the Member's contract, at the price fixed by paragraph 7. ..." (R.R. 862a.) Paragraph seven of the Mutual Home Security Policy provides as follows:

### 7. CURRENT VALUE.

For the purpose of this contract the current value of the Perpetual use of any Member's dwelling during any month shall be the total purchase price for it less the unpaid balance and any other unpaid balances on the monthly sums due. ...

(R.R. 862a.)

Pennypack, however, may decline to exercise its first option to purchase. If it refuses to exercise its option within thirty days, the member may sell his or her contract in accordance with paragraph 10, subsection (b) of the Mutual Home Security Policy, which provides in pertinent part as follows:

[T]he member may sell or transfer the said contract to any person, subject, however to the following conditions precedent, all of which shall be first fulfilled to make the transfer

---

1. Pennypack's Exhibit P–1, R.R. 826a–59a.

or sale effective: (1) The prospective transferee or purchaser, if not already a member in good standing, shall apply for membership, and in so doing, shall comply with all of the Association's requirements; (2) The application for membership must be accepted by a majority of the Association's Board of Directors; (3) He or she must be approved by such majority as a suitable and acceptable occupant of the dwelling; and (4) He or she must execute a mutual home security policy within 15 days after the Association notifies him or her to do so.

(R.R. 862a.)

Pennypack argues that the trial court erred in allegedly treating the corporation's property like an investor-owned, for-profit rental complex and in not accepting the testimony of Pennypack's appraiser, Mr. Louis Iatarola, who testified that the unique restrictions on the sale of the units were relevant to the property's appraised value. We disagree and conclude that the *self-imposed* nature of Pennypack's restrictions distinguishes its situation from cases where courts held that restrictions imposed by law were properly taken into consideration when appraising various properties.

*Appeal of Johnstown Assoc.*, 494 Pa. 433, 431 A.2d 932 (1981) involved a 165–unit low-income apartment building, subsidized through the Department of Housing and Urban Development (HUD) under a Section 236 program.[2] The only federally-subsidized project of its kind in Cambria County, "[r]ents for the apartments [were] fixed by HUD below rents prevailing for comparable non-subsidized units. Rental profit increases, if any, [could not] be retained by the taxpayer" and "the property [could not] be sold during the 16½ year period following construction." *Id.* at 436, 431 A.2d at 933–34.

Our Supreme Court held as follows regarding the federally subsidized low-income apartment building:

[T]he certitudes of a property's not being presently saleable, and of its not having a potential for rental profit increases, both of which are factors unique to Section 236 property,

---

**2.** 12 U.S.C. § 1715z–1.

are clearly matters relevant to the question of value and must at least be considered.

*Id.* at 439, 431 A.2d at 935.

*Appeal of Marple Springfield Center,* 530 Pa. 122, 607 A.2d 708 (1992) involved property at a shopping center being leased on a long-term basis for less than its current market value. The taxpayer's predecessor in title had entered into a lease with its anchor tenant under which the tenant had options to renew the lease at a constant fixed low rent until the year 2044. In *Marple,* the Supreme Court extended its holding in *Appeal of Johnstown* and held that tax assessors of any property should consider legally binding rent restrictions, regardless of whether the restrictions are due to federal regulation. The *Marple* Court reasoned as follows:

> Under the assessment statute, ... there is no meaningful distinction between income restrictions based on applicable federal regulations, ... and income restrictions based on bona fide contractual obligations.... In both instances, the fair market value—the 'actual value' or taxable value—is deflated because a buyer cannot anticipate income at current market levels.... [W]e see no justification for ignoring [the long-term lease] and [its] conclusive effect on the true market value of the shopping center.

*Id.,* 530 Pa. at 125, 607 A.2d at 709.

With regard to Pennypack, we conclude that the trial court did not err in determining that the members' capacity to change their Articles and By–Laws distinguishes Pennypack's self-imposed income and transferability restrictions from the above-described legally-imposed restrictions, the latter of which come from an outside force and must at least be considered when appraising a property. In light of Pennypack's power to amend both its by-laws and its Articles of Incorporation by a two-thirds vote of its own members,[3] the restrictions should not act to keep the real estate taxes arbitrarily low.

3. *See* paragraph *Eleventh* of its Articles at R.R. 854a and Article XIX of its By–Laws at R.R. 850a. We note that Pennypack's members have in fact amended the Articles and By–Laws in several other unrelated respects. *See* R.R. 858a, 859a.

## II. Income Capitalization Approach to Valuation:

The income approach or capitalization method is used to appraise income producing real estate by dividing the annual net rental income (gross income minus expenses) expected from the property by the investment rate of return (the capitalization or 'cap' rate) for that property.

*Cedarbrook Realty, Inc. v. Cheltenham Township,* 148 Pa.Commonwealth Ct. 310, 317 n. 4, 611 A.2d 335, 339 n. 4, *petition for allowance of appeal denied,* 533 Pa. 637, 621 A.2d 582 (1992). "Capitalization of net income is just one of the traditional approaches to determining market value for an apartment building, and is appropriate under most circumstances." *Appeal of Johnstown Assoc.,* 494 Pa. at 438, 431 A.2d at 935.

■ Pennypack argues that Mr. Camins' use of the income capitalization approach was not appropriate for valuing the real estate of a nonprofit corporation. Further, it contends that Mr. Camins did not take into account the differences between the newer units that he used as comparables and the older Pennypack units.

■ If expert testimony conflicts, as it did here, the trial court must determine the weight and credibility that it will afford each expert. *Pittsburgh–Des Moines Steel Co., Inc. v. McLaughlin,* 77 Pa.Commonwealth Ct. 565, 466 A.2d 1092 (1983). Here, the trial court simply found Mr. Camins to be the most credible witness as to valuation. Because, after reviewing Mr. Camins' testimony, we conclude that there is substantial evidence to support the trial court's finding as to his valuation and that the court made no clear error, we decline to disturb the court's credibility determination. *Cedarbrook.*

## III. Actual consideration Paid for Establishing Membership Rights as Factor in Ascertaining Fair Market Value:

■ In *Appeal of Johnstown,* our Supreme Court stated that "[t]he concept of actual market value required that rea-

sonably applied vehicles be employed to arrive at the 'price which a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied.'" *Id.,* 494 Pa. at 438, 431 A.2d at 934–35. The price paid to establish membership rights in Pennypack, however, bears no relation to the price a willing buyer would pay a willing seller and fails to reflect *all* use to which the property might in reason be applied. Thus, we conclude that the trial court did not err in declining to accord weight to the actual consideration paid in arriving at a proper valuation method.

## CONCLUSION

For the above reasons, we affirm the trial court's order setting Pennypack's real estate assessment for its 1000 unit housing complex at 8724 Crispin Street at $4,256,000.00 for the 1990 tax year and successive years.

## *ORDER*

**AND NOW,** this 30th day of March, 1994, the order of the Court of Common Pleas of Philadelphia County dated February 19, 1992 at June Term, 1990, No. 3032 is hereby affirmed.