**In re Appeal of Edwin E. ASSID and Jane B. Assid, Husband and Wife, Appellants.**

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 2003.

Decided Feb. 13, 2004.

Jonathan M. Kamin, Pittsburgh, for appellant.

No appearance entered on behalf of appellee.

BEFORE: LEADBETTER, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

Dr. Edwin E. Assid and Jane B. Assid (collectively Taxpayers) appeal from the December 11, 2002 order of the Court of Common Pleas of Armstrong County (trial court) assessing the fair market value of Taxpayer's property at $1,346,390. In doing so, the trial court affirmed the appraisal of the Board of Assessment Appeals of Armstrong County (Board). Taxpayers contend that the trial court erred in failing to consider the impact of a long-term lease, which they claim has depressed the market value of their property.

Taxpayers own a 339–acre tract of land in Kiskiminetas Township, Armstrong County, Pennsylvania. The tract has been in Taxpayer Jane B. Assid's family since the 1930s and was previously used for farming.

On or about April 1, 1999, Taxpayers leased the entire tract to a Pennsylvania Limited Partnership known as Spring Church, L.P. (Spring Church).[1] The initial term of the April 1, 1999 lease (Lease) is five years, and Spring Church has the option to extend that term for four consecutive five-year periods upon the terms and conditions set forth in the Lease. Taxpayers retain a right of reversion upon expiration of the Lease.

Upon the execution of the Lease, Spring Church commenced construction of an 18–hole golf course and club house on approximately 100 acres of the property.[2] The remainder of the leased land consists of farm land, forested land, pastures, and several out-buildings, all of which existed prior to the execution of the Lease.

The Lease establishes the "Basic Rent"[3] Spring Church must pay to Taxpayers as follows:

| Period: | Amount: |
| --- | --- |
| Lease Year 1 | Impositions only |
| Lease Year 2 | $60,000 |
| Lease Year 3 *and all subsequent Lease Years* | $60,000 *or 10% of gross profits from all golf course operations, whichever amount is greater* |

R.R. 33a (emphasis added). The Lease

---

1. Taxpayer Dr. Edwin E. Assid is one of four equal partners in Spring Church.

2. Construction was substantially completed by October of 1999. Operations commenced in July of 2000.

3. "Basic Rent" is the net annual basic rent. Reproduced Record 33a (R.R. ——).

requires Spring Church to deliver to Taxpayers, at the time of each payment of "Basic Rent," "a written statement setting forth [Spring Church's] calculation of Gross Revenues, together with sales reports or other operating statements evidencing [Spring Church's] determination of the Gross Revenues." R.R. 35a. The Lease authorizes Taxpayers to audit Spring Church's "books and records relating to the Golf Course Operations, including any tax filings made by [Spring Church]." *Id.* Finally, the Lease obligates Taxpayers to be responsible for the payment of real estate taxes.

On November 13, 2001, Taxpayers received a Notice of Appraisal from the Board, stating that their property had been assessed at $673,195. The County's predetermined assessment ratio is 50%. Therefore, the fair market value of Taxpayers' property was determined to be two times the assessed value, or $1,346,390. Taxpayers filed a timely appeal to the trial court.

On December 6, 2002, a trial was held to determine the fair market value of Taxpayers' property. The County presented the testimony of its Chief Assessor, Michael Renosky. During Mr. Renosky's testimony, the property record card and assessment record for Taxpayers' property were admitted into evidence. On cross-examination, Mr. Renosky testified that he used the cost approach,[4] rather than the capitalization of income approach,[5] to value Taxpayers' property. Stated otherwise, the Lease was not a factor in the Assessor's valuation of the property. The County did not offer any other testimony or evidence regarding valuation.

In response, Taxpayers offered the expert testimony and report of Terry A. Camburn, MAI, CRE.[6] Mr. Camburn testified that he had reviewed the Lease and that it was a "long-term" lease, which encumbered Taxpayers' property. Based upon this "long-term" encumbrance on the property, Mr. Camburn valued Taxpayers' property using the capitalization of income approach.[7] He further considered the value of Taxpayers' reversionary interest as well as the fact that the Lease placed the real estate tax burden upon Taxpayers, not Spring Church. Mr. Camburn opined that the fair market value of Taxpayers' property was $555,900, with an assessed value of $278,000. He conceded that his calculations did not take into account the possibility of an increase in the annual rent of $60,000. However, he explained his reasons as follows. The rent cannot be in-

---

4. As this Court explained in *Appeal of Property of Cynwyd Investments*, 679 A.2d 304, 308 n. 2 (Pa.Cmwlth.1996):

 The cost approach values the property by considering the reproduction or replacement cost of the property, less depreciation and obsolescence. 72 P.S. § 5020–402. Specifically, this method entails (1) estimating the value of the land assumed vacant and available for its highest and best use; (2) estimating the reproduction cost or cost new of the facility; (3) subtracting from the latter amount the facility's depreciation; and (4) adding to this depreciated balance the value of the land estimated in (1) above.

5. Under the capitalization of income approach, "the annual net rental income expect-

 ed from the property is divided by the investment rate of return, or capitalization rate, to arrive at the fair market value of the property." *Cynwyd Investments*, 679 A.2d at 308.

6. Taxpayers also offered the testimony of Taxpayer Dr. Edwin E. Assid and Donald R. Cameron, one of Dr. Assid's partners in Spring Church, regarding the background of the property and the formation and nature of the partnership.

7. Notably, at the conclusion of this testimony, counsel for the County agreed that the capitalization of income approach required in the *Marple Springfield* line of cases applied to the instant matter. R.R. 119a.

creased unless and until the golf course's *annual profits* exceed $600,000 *per annum*, and this is an unlikely event for the foreseeable future. Indeed, he testified that it would be at least five years before the investors in the golf course would reach a "break even situation." R.R. 117a.

 In an opinion and order dated December 11, 2002, the trial court found that the fair market value [8] of Taxpayers' property was $1,346,390. The trial court explained:

> The Court finds that the evidence presented by [Taxpayers] was not sufficient to rebut the presumed validity of the tax assessment being challenged. The Court holds that *Marple Springfield Center*[9] is clearly and most easily distinguishable from the case at bar. In *Marple Springfield Center*, the new owner had purchased an entire, already-constructed shopping center that was encumbered by a long-term lease. Klein's, the long-term tenant, did not construct the improvements.

In the case at bar, [Taxpayers] have, at arms-length (sic), leased a 300–plus acre tract of land to a tenant who built a golf course upon it. The rent payable to [Taxpayers] reflects the fair rental value of the property before construction, not after. To use the capitalization-of-income approach would permit the improvements made to the property by the golf course developer tenant to escape real estate taxation. That would be an absurd result.

Trial Court Opinion at 3–4, R.R. 125a–126a (footnote omitted). This appeal followed.[10]

 On appeal, the Taxpayers raise two issues.[11] First, they contend that the trial court erred as a matter of law in not requiring the Board to use the capitalization of income approach to ascertain the market value of Taxpayer's property. Second, they contend that the trial court erred as a matter of law in holding that Taxpayers' evidence was insufficient to overcome the presumed validity of the Board's assessment blotter.[12]

8. "Market value is the price which a purchaser who is willing but not obligated to buy would pay to an owner who is willing but not obligated to sell." *Appeal of Marple Springfield Center, Inc.*, 654 A.2d 635, 638 (Pa. Cmwlth.1995) (citation omitted).

9. *Appeal of Marple Springfield Center, Inc.*, 530 Pa. 122, 607 A.2d 708 (1992).

10. Our scope of review in a tax assessment appeal is narrow. The trial court's valuation will be affirmed unless it is not supported by substantial evidence or the trial court abused its discretion or committed an error of law. *Appeal of V.V.P. Partnership*, 167 Pa.Cmwlth. 282, 647 A.2d 990, 992 (1994). The trial court is the finder of fact, determining the weight to be given to an expert witnesss testimony regarding valuation. *Id.*

11. On June 13, 2003, the County was precluded from filing a brief and presenting oral argument in this matter for failing to comply

with this Court's order of May 19, 2003, ordering the County to file a brief by June 3, 2003 or be precluded from filing a brief and presenting oral argument.

12. As this Court explained in *Appeal of Marple Springfield Center, Inc.*, 654 A.2d 635, 638–639 (Pa.Cmwlth.1995)(citations omitted):

> The trial court reviews a tax assessment *de novo* and the well-established procedure in tax assessment proceedings is that the taxing authority shall first present its assessment record into evidence. Once the assessment record has been presented into evidence, the valuation contained in the assessment record is presumptively valid and the burden shifts to the taxpayer to rebut the assessment's validity. The taxing party prevails if the taxpayer fails to present credible, relevant evidence to rebut the presumed validity of the assessment, and the assessment loses the weight previously accorded to it once taxpayer produces sufficient proof of its invalidity.

*Marple Springfield* is controlling of assessments of real property burdened by a long-term lease. A review of the Supreme Court's analysis and holding is, therefore, appropriate.

In *Marple Springfield,* the taxpayer was the owner of land in Delaware County on which a shopping center was built in 1964. In 1968, the taxpayers predecessor in title entered into a long-term lease with Kleins, Inc. (Kleins), whereby Kleins leased a large portion of the shopping center to act as the anchor store for the center. The original lease expired in 1994, but Kleins held renewal options for an additional fifty years, or until 2044. The taxpayer received $1.47 per square foot under the Kleins lease, a rate which would not change during the term of the lease including the option periods should Kleins exercise the options. Kleins sublet its leased space to others at $3.04 per square foot.

 The taxpayer challenged its 1988 and 1989 real estate tax assessments. The board valued the shopping center at $19,500,000, resulting in taxation of $850,000 for each of the two years. After an appeal by the taxpayer, the trial court set the 1988 value at $7,000,000 for an assessment of $343,000, and the 1989 value at $8,500,000 for an assessment of $357,000. The taxing authorities then appealed to this Court, which vacated the order of the trial court, holding that the trial court erred in using a capitalization of income approach to valuation when the property was rented for less than the current market rental value. Our Supreme Court reversed this Court, explaining:

The capitalization-of-income approach to tax appraisals is the most appropriate if not the only valid means of establishing fair market value of real estate *when the rental income is below what would otherwise be the current market level but for a long-term commercial lease, because such long-term leases are an accepted aspect of commercial real estate transactions and their effects have a decisive impact on the price a buyer* would pay for the affected property. To interpret the tax assessment statute as requiring valuation of property in hypothetical unencumbered form, as Commonwealth Court did, is to ignore the economic realities of commercial real estate transactions. Under the rationale we followed in [*In re*] *Johnstown Associates*[494 Pa. 433, 431 A.2d 932 (1981)], it was proper for the trial court to utilize the capitalization-of-income approach in this case as a means of establishing fair market value.

*Marple Springfield,* 530 Pa. at 126–127, 607 A.2d at 710 (emphasis added). In short, fair market value is to be determined by what price a buyer will pay in accordance with the economic realities of commercial real estate transactions.[13]

 Here, the trial court gave a limited reading to our Supreme Courts holding in *Marple Springfield.* It decided that since the Taxpayers did not prove that the basic rent under the Lease was below current market levels, the capitalization of income approach to valuation was not required. It is true that the Supreme Court stated that the capitalization of income approach is most appropriate when the rental income is below what would other-

---

**13.** However, where the taxpayer has the power to amend restrictions on income and transferability of real estate by amending by-laws or articles of incorporation, the restrictions are self-imposed. As such, they need not be considered. *Pennypack Woods Home Owner-* *ship Ass'n v. Board of Revision of Taxes,* 163 Pa.Cmwlth. 80, 639 A.2d 1302 (1994). Here, the restrictions are imposed by the Lease, not by-laws subject to amendment at Taxpayers' option.

wise be the current market level. *Marple Springfield*, 530 Pa. at 126, 607 A.2d at 710. However, this language, setting forth the Supreme Courts reasoning, does not limit the Courts holding that real property assessments cannot ignore the economic realities of long-term commercial leases. Abstract valuations are not acceptable. Further, the Boards counsel agreed at the hearing that unfortunately the capitalization of income approach applied to the valuation of Taxpayers property. R.R. 119a.

 We hold that the trial court erred.[14] To determine the fair market value of Taxpayers property, the trial court was required to follow *Marple Springfield* by considering the impact of the Lease, and it failed to do so. It may be the Lease does not affect the valuation of Taxpayers property to the extent contended by the Taxpayers expert. However, once Taxpayers raised the issue of the Lease in their rebuttal case, it was incumbent upon the trial court to consider it. The trial court rejected the expert testimony of Taxpayers witness not on its merits but because it followed the capitalization of income approach to valuation. This was error because the capitalization of income method is required where, as here, property is encumbered by a long-term commercial lease. The Board simply ignored the

Lease and presented no evidence to rebut that of Taxpayers.[15]

Because the trial court erred in valuing Taxpayers property without accounting for the Lease, we vacate its order and remand this matter for further proceedings in accordance with this opinion.

## ORDER

AND NOW, this 13th day of February, 2004 the December 11, 2002 order of the Court of Common Pleas of Armstrong Country in the above-referenced matter is vacated and remanded for further proceedings in accordance with the attached opinion.

Jurisdiction relinquished.

DISSENTING OPINION BY Senior Judge KELLEY.

I respectfully dissent.

With respect to the first allegation of error raised in the instant appeal, as the trial court noted in its opinion:

[T]he Court holds that [*Appeal of Marple Springfield Center, Inc.*, 530 Pa. 122, 607 A.2d 708 (1992) ] is clearly and most easily distinguishable from the case at bar. In *Marple Springfield Center*, the new owner had purchased an entire, al-

---

**14.** The trial court expressed concern that the capitalization of income approach will allow Taxpayers to have their property improved by a golf course without having to pay increased taxes. First, the Lease was found to be an arm's length, not fraudulent, commercial transaction. Second, the Legislature may easily remedy the situation by prohibiting or restricting such tax-planning devices. In any case, unless and until *Marple Springfield* is reversed or clarified, it requires that long-term commercial leases be given consideration in determining the value of real property subject to such a lease.

**15.** The trial court held that the Taxpayers' evidence was not sufficient to "rebut the pre-

sumed validity of the tax assessment." Trial Court Opinion at 3, R.R. 125a. First, the trial court rejected the Taxpayers' expert testimony because it used the capitalization of income approach, which is the method prescribed by our Supreme Court where, as here, real property is encumbered by a long-term lease. Second, the presumed validity of the blotter assessment was rebutted by the Board itself, which acknowledged using the cost approach for valuation. *Marple Springfield* simply does not allow long-term commercial leases to be ignored in favor of a "hypothetical" valuation that presumes no lease is in effect.

ready-constructed shopping center that was encumbered by a long-term lease. Klein's, the long-term tenant, did not construct the improvements.

In the case at bar, the Assids have, at arms-length, leased a 300–plus acre tract of land to a tenant who built a golf course upon it. The rent payable to the Assids reflects the fair rental value of the property before construction, not after. To use the capitalization of income approach would permit the improvements made to the property by the golf course developer tenant to escape real estate taxation. This would be an absurd result.

Trial Court Opinion at 3–4.

It is clear to me that the trial court did not err in distinguishing *Marple Springfield Center* from the instant case. Indeed, as this Court has previously noted:

> Nothing in [*Marple Springfield Center*] suggests that its treatment of long term leases is mandatory in determining the fair market value of property when all that is involved are the typical short term leases that make up the rent rolls of a commercial building. Whether a short term lease has to be considered is determined by whether it is significant, and then the failure to consider it properly goes only to the weight of the expert's testimony, not its competency. Accordingly, as the trial court held, [*Marple Springfield Center*] applies only when a long term lease so affects the fee simple that it must be taken into account separately in determining the fair market value.

*In re Appeal of Cynwyd Property Investments,* 679 A.2d 304, 309–310 (Pa. Cmwlth.), *petition for allowance of appeal denied,* 546 Pa. 671, 685 A.2d 549 (1996).

The lease at issue in *Marple Springfield Center* was renewable for a term totaling 86 years, and involved property that had been developed by the owner prior to the execution of the lease. In contrast, in the instant case, the lease at issue is for a 5–year term renewable for a maximum term of 25 years, and involves property that was developed by the lessee after the execution of the lease.

Moreover, and more importantly, with respect to the expert testimony relied upon by the trial court, the expert's failure to consider the lease properly goes only to the weight of his testimony, and not its competency. *In re Appeal of Cynwyd Property Investments.* It is well settled that the trial court is the fact finder and, as such, determines the weight to be accorded to an expert's testimony regarding the valuation of the property. *Cedarbrook Realty, Inc. v. Cheltenham Township,* 148 Pa.Cmwlth. 310, 611 A.2d 335, *petition for allowance of appeal denied,* 533 Pa. 637, 621 A.2d 582 (1992). Absent clear error, the factual findings of the trial court have much weight and should not be reversed on appeal. *Id.* Thus, contrary to the Majority's conclusion, I firmly believe that the trial court properly distinguished *Marple Springfield Center* in disposing of the Assids' tax assessment appeal, and that it did not commit any such "clear error" compelling reversal of its order.

Accordingly, unlike the Majority, I would affirm the trial court's order.