1198 **BUTLER STREET ASSOCIATES, 815 Ferry Street Associates, 600 Ferry Street Associates, Canal Park Associates, 100 South Third Street Associates, Grandview Apartments Associates, Knox Avenue Senior Associates**

v.

**BOARD OF ASSESSMENT APPEALS, COUNTY OF NORTHAMPTON**

**Appeal of: Easton Area School District.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 11, 2008.
Decided April 17, 2008.

---

Sharon W. Montanye, New Britain, for appellant.

Reneé L. Ferretti, Allentown, for appellees.

BEFORE: PELLEGRINI, Judge, and SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SIMPSON.

In this tax assessment appeal, we consider for the first time application of Section 402(c)(1) of The General County Assessment Law (Assessment Law)[1] to property valuation for real estate tax purposes. Added to the Assessment Law in 2003, Section 402(c)(1) provides that "[i]n arriving at the actual value of real property, the impact of applicable rent restrictions, affordability requirements or any other related restrictions prescribed by any Federal or State programs shall be considered." 72 P.S. § 5020–402(c)(1).

The Easton Area School District (Taxing Authority)[2] appeals an order of the Northampton County Common Pleas Court (trial court) sustaining the assessment appeals of 1198 Butler Street Associates, 815 Ferry Street Associates, 600 Ferry Street Associates, Canal Park Associates, 100 South Third Street Associates, Grandview Apartment Associates, and Knox Avenue Senior Associates (collectively, Taxpayers). As more fully described below, the trial court established new assessment values for the seven properties at issue. In this appeal, Taxing Authority assigns error in the trial court's reliance on the properties' "use value" in determining fair market value, and it asserts an abuse of discretion by concluding Taxing Authority's expert witness's approach to valuation was invalid

---

1. Act of May 22, 1933, P.L. 853, *as amended,* added by the Act of December 3, 2003, P.L. 227, 72 P.S. § 5020–402(c)(1).

2. Additional taxing authorities include the City of Easton and Palmer Township, both of which have filed notices of non-participation pursuant to Pa. R.A.P. 908. The Northampton County Board of Assessment Appeals (Assessment Board) joins in Taxing Authority's brief.

and by adopting Taxpayer's proposed findings of fact. Discerning no reversible error, we affirm.

## I.

Taxpayers are seven limited partnerships. Valley Housing Development Corporation (Valley Housing) is the sole general partner of each limited partnership. In the 1990s, Valley Housing put into service the subject properties, all of which are located in the Easton Area School District, Northampton County. Five of the properties are located in the City of Easton, one property is located in Palmer Township, and one property is located in Forks Township.

In August 2005, Taxpayers filed a tax assessment appeal for each property with the Northampton County Board of Assessment Appeals (Assessment Board). The Assessment Board denied Taxpayers' appeals and, consequently, Taxpayers appealed to the trial court. The trial court consolidated the appeals and granted Taxing Authority's motion to intervene.

Examining the matter anew, the respected trial court heard three days of testimony. At the outset, Taxing Authority introduced into evidence the Assessment Board's tax assessment records.[3] To rebut the presumed validity of the tax assessment records, Taxpayers then called three witnesses.

Taxpayers first presented the testimony of their general counsel (Taxpayers' Counsel). He explained each Taxpayer is a Pennsylvania limited partnership and Valley Housing is a non-profit charitable organization.

Providing background information for income and rent restrictions affecting the properties, Taxpayers' Counsel explained that in 1986 Congress enacted Section 42 of the Internal Revenue Code, 26 U.S.C. § 42. This section provides income tax credits for non-public entities that develop affordable rental housing. Section 42 further establishes income and rent restrictions on developed properties in exchange for income tax credits for a period of 10

---

3. The subject properties were assessed as follows. Unless otherwise noted, the property's location is the same as the individual Taxpayer's name.

| Property | Assessed Value |
| --- | --- |
| 1198 Butler Street | $ 148,480* |
| 815 Ferry Street | $ 195,440 |
| 600 Ferry Street | $ 167,120 |
| 300 Iron Street (Canal Park Associates) | $ 412,120 |
| South Third Street | $ 401,650 |
| Grandview Apartments | $1,963,550 |
| Sullivan Trail (Knox Avenue Senior Associates) | $ 900,000 |

* The above assessment figure is the sum of the parcels identified in Taxing Authority's Exhibit No. 1. We note, however, Taxpayers' real estate expert (Taxpayers' expert) divided the Butler Street parcels into two categories. Taxpayers' Ex. 9 at 21. The first category contains "Block 1" parcels and the total assessed value is $148,480, which Taxpaying Authority's Exhibit 1 confirms. Id. The second category contains "Block 8" parcels, and each parcel has an assessed value between $1,900 and $2,100. Id. Taxpayers' expert's report indicates a total assessed value of $167,600 for all parcels. However, Taxing

Authority did not introduce into evidence the assessment records for the Block 8 parcels. Id. As such, Taxing Authority is not entitled to the presumption the Assessment Board's records of the Block 8 parcels are valid. Koppel Steel Corp. v. Bd. of Assessment Appeals of Beaver County, 849 A.2d 303 (Pa.Cmwlth. 2004). Nevertheless, this discrepancy has no impact on the outcome here because Taxpayers' expert did not testify the Block 8 parcels produce any income. As explained above, the trial court found Taxpayers' expert's use of the income approach persuasive.

years. Each state is allocated a certain number of income tax credits. For the Commonwealth, the Pennsylvania Housing Finance Agency (PHFA) is charged with allocating the income tax credits and enforcing any age and income restrictions. The PHFA also establishes maximum rent rates for properties receiving the income tax credits.

Taxpayers' Counsel testified Valley Housing placed the subject properties into service in the 1990s. All properties were developed with the same non-revocable restrictive covenant in order to benefit from the income tax credits. In particular, the subject properties are all rent and income restricted for a period of 30 years. The non-revocable covenants restrict the renter's income level to either 50% or 60% of area median income. So long as Taxpayers operate the subject properties in compliance the restrictive covenants and 26 U.S.C. § 42, Taxpayers receive an income tax credit for a period of 10 years. In years 11 through 15, if Taxpayers sell or dispose of the subject properties, or are not in compliance with 26 U.S.C. § 42, the Internal Revenue Service recaptures the income tax credits previously taken. In years 16 through 30, the rent and income restrictions remain in place; however, the income tax recapture provisions are no longer in effect.

Taxpayers also presented the testimony of Valley Housing's executive director (Executive Director). He testified that the PHFA annually publishes a list of rent restrictions and maximum rent rates for 26 U.S.C. § 42 purposes. The allowable maximum rent rates are based on 50% and 60% of the area's median income level. Taxpayers, according to Executive Director, do not charge the maximum rent allowed under the PHFA rates because their tenants cannot afford it. He explained Taxpayers would experience increased vacancy and collection rates if they charged the maximum allowable rent. Executive Director then reviewed each property, detailing the rent actually charged, the PHFA maximum rent rates, and the number of units Taxpayers rent at the 50% and at the 60% median income levels. Director testified Taxpayers need property tax relief because the income generated from the subject properties does not support the current real estate taxes. At the time of Executive Director's testimony, only two properties received the income tax credits. However, all properties remain subject to the income and rent restrictions.

Taxpayers also presented the testimony of its real estate expert (Taxpayers' expert). Expert identified the properties' highest and best uses as subsidized income tax credit housing facilities. Addressing the three methods of valuation for real estate tax purposes,[4] Taxpayers' expert discounted the cost approach because the

---

4. Section 402(a) of the Assessment Law identifies three methods of property valuation that must be considered in conjunction with one another when arriving at market value for assessment purposes: cost approach, comparable sales approach, and income approach (or capitalization approach). 72 P.S. § 5020–402(a). The cost approach considers reproduction or replacement costs of the property, less depreciation and obsolescence. *In re Appeal of/Property of Cynwyd Invs.*, 679 A.2d 304 (Pa.Cmwlth.1996). The sales approach compares the subject property to similar properties with consideration given to size, age, physical condition, location and other factors. *Id.* The income approach determines fair market value by dividing the subject property's annual net rental income by an investment rate of return, or capitalization rate. *Id.* The income approach is the most appropriate method for appraising property typically purchased as an investment because it is valued by a purchaser for its ability to produce income. *Appeal of V.V.P. P'ship*, 167 Pa.Cmwlth. 282, 647 A.2d 990 (1994).

subject properties' rental incomes would not support construction of new facilities. Likewise, Taxpayers' expert discounted the comparable sales approach on the basis there were no other comparable units with similar rent restrictions.

Utilizing the income approach to valuation, Taxpayers' expert first noted the subject properties operate under age and income restrictions imposed by 26 U.S.C. § 42 and the non-revocable restrictive covenants. This is in accord with Section 402(c)(1) of the Assessment Law. Taxpayers' expert then calculated each property's gross income less a 5% vacancy and collection loss rate. The expert also determined Taxpayers' property expenses, which included fixed and operating expenses. For each property, Taxpayers' expert subtracted expenses from gross income to arrive at net income. The expert multiplied each property's net income by a capitalization rate to arrive at the property's fair market value.[5]

For its part, Taxing Authority offered its own expert (Taxing Authority's expert) who reviewed Taxpayers' expert's report. She did not appraise the properties. Relevant here, Taxing Authority's expert disagreed with Taxpayers' expert's income and expense calculations, vacancy/collection rates, and capitalization rates. Taxing Authority's expert believed the vacancy/collection rates and capitalization rates were too high, and she would have used the PHFA's maximum rent to determine Taxpayers' gross incomes. Notably, Taxing Authority's expert only reviewed one property in-depth, that is, the Knox Avenue Senior Associates property. For all properties, she offered only a range of fair market values for each property based on various adjustments. When questioned about Section 402(c)(1) of the Assessment Law, Taxing Authority's expert's answer was unclear, merely stating her review did not interpret the Assessment Law.

By order of June 21, 2007, the trial court granted Taxpayers' appeals. In doing so, the trial court adopted as its own Taxpayers' 21 proposed findings of fact. These findings applied the common level ratio to the fair market values described below. The trial court also made four additional findings. In its first two additional findings, the trial court recognized the Assessment Board's current assessments fail to reflect the properties rent and income restrictions. In its final two findings, the trial court credited Taxpayers' expert's testimony over that of Taxing Authority's expert.

Relying on Taxpayers' calculations of fair market value, the trial court arrived at the properties' assessed value by multiplying the fair market value by the common level ratio of 36.4%. Accordingly, the trial

---

5. Mathematically, Taxpayers' expert's calculations are expressed as follows:

| Property | Income | | Capitalization Rate | Fair Market Value |
|---|---|---|---|---|
| Butler Street | $ 26,825 | × | 11.5% | $ 230,000 |
| 815 Ferry Street | $ 24,870 | × | 11.5% | $ 220,000 |
| 600 Ferry Street | $ 22,540 | × | 11.5% | $ 200,000 |
| Iron Street/Canal | $ 47,666 | × | 11.5% | $ 415,000 |
| South Third Street | $ 71,976 | × | 11.5% | $ 625,000 |
| Grandview | $368,215 | × | 11.0% | $3,350,000 |
| Sullivan Trail/Knox | $281,680 | × | 11.1% | $1,200,000 |

Taxpayers' expert used a base capitalization rate of 9%, then adjusted it to account for real estate taxes not included in each property's operating expenses. Taxing Authority's expert does not dispute this is an acceptable method for determining fair market value un-

court established each property's assessed value as follows:

| Property | Assessed Value |
|---|---|
| Butler Street | $ 83,636 |
| 815 Ferry Street | $ 80,000 |
| 600 Ferry Street | $ 72,727 |
| Iron Street (Canal Park Associates) | $ 150,909 |
| South Third Street | $ 222,273 |
| Grandview Apartments | $1,218,182 |
| Sullivan Trail (Knox Avenue Sr. Associates) | $ 436,364 |

Taxing Authority appeals.

## II.

Taxing Authority raises three issues on appeal. First, Taxing Authority asserts the trial court committed legal error by relying on "use value" in determining the subject properties' fair market values. Second, Taxing Authority contends the court erred by determining its expert's opinion was invalid. Third, Taxing Authority maintains the trial court erred by adopting Taxpayers' proposed findings of fact. On review, we are limited to determining whether the trial court abused its discretion, committed an error of law, or reached a decision not supported by substantial evidence. *Green v. Schuylkill County Bd. of Assessment Appeals*, 565 Pa. 185, 772 A.2d 419 (2001). While the weight of the evidence is before the appellate court for review, the trial court's findings are entitled to great weight and will be reversed only for clear error. *Id.*[6]

## A.

■ Preliminarily, we note Section 402(a) of the Assessment Law requires property to be assessed at its actual value. 72 P.S. § 5020–402(a). Actual value means fair market value and, in turn, fair market value is defined as a "price which a purchaser, willing but not obliged to buy, would pay to an owner, willing but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied." *F & M Schaeffer Brewing Co. v. Lehigh County Bd. of Appeals*, 530 Pa. 451, 457, 610 A.2d 1, 3 (1992).

■ Further, the trial court, which hears the matter anew, is the fact-finder in tax assessment matters. *Green.* Procedurally, the taxing authority first presents its assessment record into evidence, which presumptively establishes the validity of the assessment. *Koppel Steel Corp. v. Bd. of Assessment Appeals of Beaver County*, 849 A.2d 303 (Pa.Cmwlth.2004). The burden of proof then shifts to the taxpayer to present sufficient competent, credible and relevant evidence of the fair market value to overcome the presumed validity of the tax assessment records. *Id.* If the taxpayer presents sufficient competent, credible and relevant testimony to rebut the assessment record, the record loses the weight previously afforded to it. *In re Assid*, 842 A.2d 995 (Pa.Cmwlth.2004).

der the income approach. Reproduced Record (R.R.) at 548a–49.

**6.** The relief which Taxing Authority seeks, a determination by this Court of the properties' fair market values based on Taxing Authority's preferred view of the evidence, is beyond our appellate power. *Matter of Harrisburg Park Apartments, Inc.*, 88 Pa.Cmwlth. 410, 489 A.2d 996 (1985) (Commonwealth Court's scope of review does not extend to making new findings of fact).

Where the taxpayer presents such evidence, the taxing authority may no longer rely on the assessment record unless it is willing to risk having the court believe the taxpayer's proof. *Koppel.* Where the taxing authority presents rebuttal evidence, the court must determine the weight afforded all the evidence. *Id.*

## B.

■ In its first assignment of error, Taxing Authority asserts the trial court impermissibly relied on "use value" in determining the subject properties' fair market values. "Use value" for property tax valuation purposes represents the property's value to a specific user. *F & M Schaeffer.*

In support, Taxing Authority directs our attention to the trial court's conclusion:

> [Taxpayers] have clearly carried the burden of proof under [*Green*]. [Taxpayers' expert's opinions], which were bolstered by the testimony of [Taxpayers' Counsel] and [Executive Director], as well as evidence in the form of copies of the restrictive covenants involved in each property, make it clear that in light of the state and federal statutory scheme to provide tax benefits in return for the provision of affordable housing, that the proper approach in valuing these properties is "use value." Use value has been defined as a "concept based on the productivity of an economic good ... the value a specific property has for a specific use." [*F & M Schaeffer*]. [Taxing Authority's] expert ignored the special use valuation that governs in accordance with the provisions of the legislative scheme established by the state and federal legislatures.

Trial Ct. Op. at 6. This language, Taxing Authority contends, disregards the Supreme Court's holding in *F & M Schaeffer* that "use value" cannot be considered in assessing fair market value for tax assessment purposes.

In *F & M Schaeffer,* the owner used the property at issue, assessed at $34 million, as a brewing plant. The local county assessment board denied the owner's assessment appeal. On appeal to the trial court, the county's expert testified the property's highest and best use was a "special purpose brewery." The county's expert utilized the cost method to arrive at a property valuation of $34 million.

The trial court adopted the county's assessment value and denied the owner's appeal. This Court affirmed. On further appeal, the Supreme Court rejected the county's "special use" approach to valuation, noting use value represents the value to a specific user and may vary depending on external conditions unrelated to the real estate market. The Court reasoned that because a "special use" property could be valued *higher* than at market rates, it did not reflect the fair market value as required by the Assessment Law. Accordingly, the Court held that a property's use and its resulting value-in-use cannot be considered in assessing the property's fair market value for tax assessment purposes.

■ In this case, Taxing Authority contends Taxpayers' self-imposed rent restrictions are tantamount to *F & M Schaeffer's* prohibited "use value," resulting not in higher-than-market values but in lower-than-market values. Taxing Authority questions the expert's reliance on Taxpayers' self-imposed rent restrictions (renting units for less than the PHFA maximum rent rates).[7]

---

7. Taxing Authority also alleges Taxpayers' expert relied on unverified information (such as operating expenses) to calculate net income. The financial data upon which Taxpayers' ex-

As previously noted, the General Assembly amended the Assessment Law in 2003 to include Section 402(c)(1). Section 402(c)(1) provides:

[i]n arriving at the actual value of real property, the impact of applicable rent restrictions, affordability requirements or any other related restrictions prescribed by any Federal or State programs shall be considered.

72 P.S. § 5020–402(c)(1). The 2003 amendment to the Assessment Law is consistent with prior case law addressing the effects of rent restrictions. *See Appeal of Marple Springfield Ctr., Inc.*, 530 Pa. 122, 607 A.2d 708 (1992) (long-term lease restrictions pursuant to bona fide contractual obligations may be considered in determining fair market value for taxing purposes); *In re Johnstown Assocs.*, 494 Pa. 433, 431 A.2d 932 (1981) (rent restrictions must be considered in calculating fair market value of HUD property for taxing purposes). *But see Pennypack Woods Home Ownership Ass'n v. Bd. of Revision of Taxes*, 163 Pa.Cmwlth. 80, 639 A.2d 1302 (1994) (homeowner association's ability to amend by-laws regarding transferability and sale of veteran housing cannot be considered when calculating fair market value).

■ The statute mandates that rent restrictions be considered in determining fair market value. *See* 72 P.S. § 5020–402(c)(1). Section 402 has the laudatory goal of encouraging development of low income housing in exchange for reduced property valuation for real estate tax purposes. By amending Section 402 to include subsection (c), the General Assembly intended to provide property tax relief to those entities that do not have unfettered ability to raise rent to combat increasing business expenses.

In addition to the clear statutory directive, we are guided by *Appeal V.V.P. Partnership*, 167 Pa.Cmwlth. 282, 647 A.2d 990 (1994). In that case, the taxpayer appealed the assessment of a fitness facility that offered tennis, squash and racquetball courts. The trial court found the taxpayer's income approach to valuation purposes persuasive. Affirming the trial court, this Court noted the taxpayer's approach was logical and methodical, and not equivalent to a "use value." In particular, the taxpayer's evidence proved the fitness facility, as an investment, was worth only the income it generated.

Here, Taxpayers' Counsel credibly testified the properties are subject to rent restrictions under 26 U.S.C. § 42 and the non-revocable restrictive covenants. Reproduced Record (R.R.) at 175a. The restrictive covenants limit the properties' incomes for a period of 30 years *regardless of ownership and expiration of the tax credits. Id.* at 213a. As in *V.V.P. Partnership*, the properties here, as rental units, would only be purchased as investment income.

Moreover, Taxpayers' business decision to charge less rent than the maximum rent allowed by the PHFA does not compel a different result. Taxing Authority maintains that this business decision is a self-imposed limitation which this Court rejected, citing *Pennypack.*

---

pert based his income calculations, however, goes to the weight and credibility afforded his testimony. *See James Corp. v. N. Allegheny Sch. Dist.*, 938 A.2d 474 (Pa.Cmwlth.2007) (school district's challenges to the data upon which general contractor's expert witness calculated damages goes to weight afforded the expert's testimony). The same is true regarding claims Taxpayers' expert failed to consider below-market financing (although there was no evidence the properties were so financed). The trial court, as fact-finder, has discretion over evidentiary weight and credibility determinations. *In re Penn–Delco Sch. Dist.*, 903 A.2d 600 (Pa.Cmwlth.2006), *appeal denied*, 591 Pa. 739, 921 A.2d 499 (2007).

The position of Taxing Authority is unpersuasive for both legal and factual reasons. Legally, the position fails to account for the new Assessment Law's direction that "affordability requirements" be considered in determining fair market value for tax assessment purposes. This new, express statutory directive must be viewed as overriding older court decisions to the extent they support a contrary result.

Although the Assessment Law does not define "affordability requirements," Section 42(g) of the Internal Revenue Code, 26 U.S.C. § 42(g), provides guidance on affordability for purposes of income tax credits. In particular, Subsection (g)(2)(A) identifies a "rent-restricted" unit as a "residential unit [where] the gross rent with respect to such unit does not exceed 30 percent of the imputed income limitation applicable to such unit. ...." 26 U.S.C. § 42(g)(2)(A). Thus, federal tax law anticipates affordability restrictions in addition to maximum allowable rents. This is consistent with the statutory goal of making affordable housing available to lower income consumers.

■ Factually, Executive Director emphasized that Taxpayers experience substantially more vacancies and collection losses at increased rent rates. *Id.* Thus, Taxpayers considered the affordability of the subject properties to low income consumers and established their rent rates accordingly. A court must consider the economic realties associated with property when assessing its fair market value. *See In re Johnstown Assocs.*

Furthermore, the facts of this case are significantly different from those in *F & M Schaeffer,* where the Supreme Court sought to protect a landowner from higher-than-market values. There is no indication in *F & M Schaeffer* that the Court intended its reasoning to apply in other situations, such as the alleged lower-than-market values here. Nor is there any indication in *F & M Schaeffer* that the Court intended its resolution to prevail over express statutory language, as embodied in the after-enacted amendment to the Assessment Law.

In light of Section 402 of the Assessment Law, Taxpayers' evidence regarding rent restrictions under 26 U.S.C. § 42, the non-revocable restrictive covenants which limit Taxpayers ability to produce income on the subject properties, and the affordability of Taxpayers' units, we discern no error in the trial court's application of Section 402(c)(1) of the Assessment Law. We conclude the court's reference to "use value" was harmless error.

### C.

Taxing Authority also asserts error in the trial court's conclusion its expert's approach to valuation was invalid. In particular, the trial court opined:

> [Taxing Authority's expert], while providing some useful analysis of fair market value, failed to consider the restrictions and requirements imposed by the covenants that are required in order to qualify for special tax incentive treatment of these properties. Thus, her analysis is clearly wrong. To ignore these mandates is a failure that effectively provides a distorted valuation for tax purposes relating to all of these properties. This has the effect of rendering her entire approach to the assessment issue invalid.

Trial Ct. Op. at 4–5; Finding of Fact No. (F.F.) 25. The trial court also found Taxing Authority's expert "ignored the special use valuation that governs in accordance with the provisions of the legislative scheme established by the state and federal legislatures." Trial Ct. Slip. Op. at 6.

Taxing Authority contends this Court can review the trial court's credibility de-

terminations because the court offered specific reasons for rejecting Taxing Authority's expert testimony. *See Green* (distinguishing between credibility determinations as a matter of personal veracity and a matter of substantive reasonableness, the latter of which is reviewable); *Masalehdan v. Allegheny County Bd. of Property Assessment, Appeals & Review,* 931 A.2d 122 (Pa.Cmwlth.2007).

As to whether Taxing Authority's expert properly considered the Assessment Law, this is a matter of substantive reasonableness, which we will revisit. Nevertheless, we discern no error.

■ We agree with Taxing Authority that its expert revised her valuations after learning of the PHFA's rent restrictions; however, we disagree this compels reversal. Taxing Authority's expert considered maximum rents, but she admittedly did not also consider further limitations on income related to affordability of the units, believing it had no impact on fair market value. R.R. at 523a. As discussed more fully above, affordability of the units should be considered under the Assessment Law. Also, higher vacancy rates and collection costs associated with higher rents detract from net income. Obviously, items which lessen income are significant under an income approach to property valuation. As such, they must be considered as part of

the economic realities surrounding the properties. *See In re Johnstown Assocs.* In sum, Taxing Authority's expert's failure to consider affordability of the units contravenes these legal principals, and rejection of the expert's opinions was substantively reasonable.

There are also non-reviewable personal veracity matters regarding the trial court's credibility determination. In particular, Taxing Authority's expert provided only a "range of fair market values," and only reviewed one property in depth. By limiting its expert's review to the Knox Avenue property and seeking only a range of values for the properties, Taxing Authority ran the risk of the trial court concluding the expert's opinion did not support modifications to the operating expenses, capitalization rates, and vacancy/collection rates of *all* seven properties.[8] *See* R.R. at 438a (trial court stated, "I'm less concerned about the Knox [property] than I am about the others, because [Taxing Authority's expert] used a, quote, 'in-depth analysis of Knox' "). As the trial court was free to reject the expert's methodology, this reason is also sufficient to support the trial court's credibility determination. *Koppel.*

### D.

■ Taxing Authority's final assignment of error challenges the trial court's adop-

---

8. For example, Taxpayers' expert's report identified several types of operating expenses, including day to day operations; property and liability insurance; utility costs; capital reserve; and, short-term expenses. Taxpayers' Exs. 8–14. Taxing Authority's expert, however, did not identify specific reasons for her significant downward adjustments of Taxpayers' operating expenses other than to claim Taxpayers' expenses exceeded industry norms. *See* Taxing Authority's Ex. 8, and Addendum; R.R. at 442a; 444a–47a; 460a; 488a; 495a; 503a; 505a; 508a. She acknowledged Taxpayers did not deny her access to their financial records and stated Taxing Authority employed her services solely to

review Taxpayers' expert's report. R.R. at 481a–82a.

Taxing Authority's expert also reduced the vacancy/collection loss rate to 1% for the Knox Avenue apartments because it has a waiting list. Yet, there is no testimony the remaining six properties also have waiting lists. In fact, Taxing Authority's expert applied a 1% vacancy rate for all properties "just for consistency, [and] nothing more than that." R.R. at 449a. Similarly, Taxing Authority's expert applied three different capitalization rates to each property, ranging from 7%–9%. Thus, the trial court could find the expert's across the board adjustments, without elaboration, unclear and unpersuasive.

tion of Taxpayers' proposed findings of fact. Agreeing with Taxpayers' findings, the trial court adopted them as its own in the interest of judicial economy. Trial Ct. Op. at 2–3.

Taxing Authority baldly suggests the trial court's adoption of Taxpayers' findings indicates a lack of "careful and conscientious *de novo* fact-finding." Taxing Authority's Br. at 13–14. We strongly disagree.

We find nothing in the Assessment Law prohibiting the trial court from requesting and adopting proposed findings, and Taxing Authority fails to identify any authority for its assertion. *See* Section 518.2 of the Assessment Law, 72 P.S. § 5020–518.2 (pertaining to appeals to court).[9] Instead, there is case law affirming the adoption of a party's proposed findings where the record supports the suggested findings. *In re PP & L, Inc.*, 838 A.2d 1 (Pa.Cmwlth. 2003) (trial court adopted property owner's proposed findings based on testimony that fair market value of property was $57 million and $71 million during relevant tax years); *cf. Dillon v. Workers' Comp. Appeal Bd. (City of Phila.)*, 853 A.2d 413 (Pa.Cmwlth.2004) (workers' compensation judge's verbatim adoption of findings will be affirmed as long as substantial evidence in the record supports the findings).

Here, Taxpayers' credible expert testimony supports the trial court's findings as to the subject properties' fair market values. These findings were limited to the properties' fair market values as of the date of the assessment appeal, the appropriate common level ratio, and application of the common level ratio to the fair market values. R.R. at 1492a–94a. In addition, the trial court made additional findings explaining its reasons for adopting Taxpayers' findings and its credibility determinations. The record also shows the trial court's keen interest in the proceedings. We therefore reject Taxing Authority claim the trial court's adoption of Taxpayers' findings constitutes reversible error.[10]

### III.

As the trial court noted, Section 402(c)(1) of the Assessment Law requires a property's fair market value to reflect rent restrictions, affordability requirements, and any other related restrictions prescribed by state and federal programs. The Assessment Board records here did not reflect these requirements. Taxpayers, through sufficient competent, credible and relevant evidence, rebutted the presumed validity of the assessment records. Finding no reversible error in the trial court's order, we affirm.

### *ORDER*

AND NOW, this 17th day of April, 2008, the order of the Court of Common Pleas of Northampton County is **AFFIRMED.**

---

**9.** Added by the Act of December 13, 1982, P.L. 1160.

**10.** We also reject Taxing Authority's contention the evidence does not support the trial court's determination that Taxpayers met their burden of proof by clear and convincing evidence. *See* Trial Ct. Slip Op. at 2 ("[i]n addition, the Court finds that ... Taxpayers have established by clear and convincing evidence that the market values contained in

[their proposed findings] are accurate and represent the appropriate assessments...."). Although the trial court referred to this heightened standard, Taxpayers were required only to produce sufficient competent, credible, and relevant evidence to overcome the presumed validity of the Assessment Board's records. *Koppel*. As explained above, Taxpayers met their burden.

CONCURRING OPINION BY Judge PELLEGRINI.

Based on the issues raised, I join in the well-reasoned majority opinion. I write separately because I disagree that 72 P.S. § 5020–402(c) is consistent with our Supreme Court's decision in *In re Appeal of Johnstown Associates,* 494 Pa. 433, 431 A.2d 932 (1981). In that case, like here, rents in a subsidized housing project were fixed by the Department of Housing and Urban Development at a rate below the prevailing rate for comparable non-subsidized units in a long term arrangement in return for a subsidized mortgage. The taxpayer argued that the rent restrictions should be considered in valuing the property. Our Supreme Court agreed, holding that the certitude that the property did not have the potential for rental profit increases must at least be considered, but went on to hold that the depreciated tax shelter benefits associated with owning this type of property could be taken into consideration. *Id.,* 431 A.2d at 935.

Read in full, 72 P.S. § 5020–402(c), however, provides that:

(c)(1) In arriving at the actual value of real property, the impact of applicable rent restrictions, affordability requirements or any other related restrictions prescribed by any Federal or State programs shall be considered.

(2) **Federal or State income tax credits with respect to property shall not be considered real property or income attributable to real property.**

(3) This subsection shall apply in all counties and other political subdivisions in this Commonwealth.

(Emphasis added.)

Unlike our Supreme Court's holding in *Johnstown Associates,* 72 P.S. § 5020–

402(c) precludes the substantial credits a taxpayer receives from being included in the income stream. By not allowing those tax credits, that provision could be considered to have created a back door partial tax exemption, calling into question whether it violates Article 8, Section 2 of the Pennsylvania Constitution which only allows tax exemptions for real property in certain enumerated areas.[1] We do not need to deal with that issue here because in the years in question in this appeal, taxpayer is receiving no tax credits.

Moreover, the income stream used in the income capitalization method of valuation will need to be adjusted as the 30-year rent restriction nears its end. For example, in year 29 of the rent restriction, a willing buyer will look more at what market rent can be charged after the rent restriction has expired in determining what he or she is willing to pay for the property.

---

1. Article 8, Section 5 of the Pennsylvania Constitution provides that "All laws exempting property from taxation, other than the property above enumerated [Article 8, § 2 of the Constitution] shall be void."