607 A.2d 708

**In re Appeal of MARPLE SPRINGFIELD CENTER, INC., a Pennsylvania Corporation, From Decision of Board of Assessment Appeals of Delaware County, Relating to Premises Known as Marple Springfield Shopping Center, Route 320, West of Route 1, Marple Township, Delaware County, Pennsylvania, for Year 1988, Folio No. 25–00–04629–00.**

**Appeal of MARPLE SPRINGFIELD CENTER, INC.**

Supreme Court of Pennsylvania.

Argued Dec. 4, 1991.

Decided March 10, 1992.

Walter T. ReDavid, Springfield, for appellant.

Vram Nedurian, Jr., Newtown Square, for Marple Newtown School Dist.

Robert F. Pappano, City Sol., for Marple Tp.

George A. Pagano, Media, for Bd. of Assessment Appeals.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

In the case of *In Re Johnstown Associates*, 494 Pa. 433, 431 A.2d 932 (1981), this court held that sale restrictions and rent restrictions, in the context of federally subsidized low-income apartment buildings, were factors taxing authorities must use in appraising property. The issue in

this case is whether the holding in *Johnstown Associates* should be limited to federally-regulated properties, or whether legally binding rent restrictions should be considered by tax assessors of any property, whether or not the restrictions are due to federal regulation. The trial court reduced the assessed value of the property at issue in this case because it was subject to long-term contractual rent restrictions not due to federal regulation of the property. The Commonwealth Court reversed, holding that *Johnstown Associates* should be limited to the context of federally-regulated housing.

Appellant taxpayer is the owner of land in Delaware County on which a shopping center was built in about 1964. In 1968, appellant's predecessor in title entered into a long-term lease with Kleins, Inc., whereby Kleins leased a large portion of the shopping center to act as the "anchor" store for the center. The original lease expires in 1994, but Kleins has options for an additional fifty years, or until 2044. The owner receives $1.47 per square foot under the Kleins lease, a rate which has remained constant throughout the term of the lease and will not change throughout the option periods if Kleins exercises the options. Kleins now sublets its leased space to others at $3.04 per square foot.

The taxpayer appealed from the decision of the assessment appeal board denying its petition to reduce its 1988 and 1989 real estate tax assessments. The board valued the shopping center at $19,500,000, resulting in taxation of $850,000 for each of the two years. The court of common pleas set the 1988 value at $7,000,000 for an assessment of $343,000 and the 1989 value at $8,500,000 for an assessment of $357,000.

The taxing authorities appealed to the Commonwealth Court, which vacated the order of the trial court, holding that the court erred in utilizing a capitalization-of-income approach to valuation when the property is rented for less than the current market rental value. Commonwealth Court held that when "property is rented at less then [sic]

fair market level, a trial court may not rely on a capitaliza-tion-of-income approach which is based on the current rental income rather than the market level rental income." *Appeal of Marple Springfield Center,* 133 Pa.Cmwlth. 406, 410–11, 576 A.2d 106, 109 (1990). Commonwealth Court distinguished *Johnstown Associates, supra,* on the basis that the *Johnstown* "property was federally regulated.... In this case, there are no federal regulations involved. Taxpayer freely chose the use of the property without comparable regulatory restrictions." 133 Pa.Cmwlth. at 411, 576 A.2d at 109. We allowed the taxpayer's appeal to consider whether the *Johnstown* holding should be so limited.

The statutory foundation for tax assessments is, as Commonwealth Court recognized, fair market value: the General County Assessment Law requires that taxable property be valued "according to the actual value thereof, and at such rates and prices for which the same would separately bona fide sell." 72 P.S. § 5020–402. We have interpreted "actual value" to mean "a price which a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied." *Deitch Co. v. Board of Property Assessment,* 417 Pa. 213, 217, 209 A.2d 397, 400 (1965). Commonwealth Court, however, added its conclusion that the "statute requires that valuations of property be in their unencumbered form.... A landowner is not relieved of his tax burden merely because he does not secure the most profitable use of his land." 133 Pa.Cmwlth. at 410, 576 A.2d at 108.

Under the assessment statute, however, there is no meaningful distinction between income restrictions based on applicable federal regulations, as in *Johnstown Associates,* and income restrictions based on bona fide contractual obligations, as in this case. In both instances, the fair market value—the "actual value" or taxable value—is deflated because a buyer cannot anticipate income at current market levels. There is no allegation that the 1968 long-

term lease to Kleins was fraudulent in any way or that it was other than an unremarkable business transaction which was reasonable at the time, and we see no justification for ignoring its present existence and conclusive effect on the true market value of the shopping center.

■ The trial court heard testimony from appraisers presented by both the taxpayer and the taxing authorities. Both experts presented evidence under two recognized appraisal methods for determining fair market value: the capitalization-of-income and the market data approaches. Predictably, the taxpayer's appraiser set a lower value on the property than the value set by the taxing authorities' expert. The trial court painstakingly analyzed the testimony presented by both appraisers, crediting and discrediting portions of the evidence presented by both parties for valid reasons cogently set forth in its opinion. The court judiciously took account of all the evidence and set a value on the property which was within the range of values presented by both parties. The standard of review in a tax appeal is to determine whether the trial court abused its discretion, committed an error of law, or rendered a decision unsupported by the evidence. *Walnut–Twelve Assocs. v. Bd. of Revision*, 131 Pa.Cmwlth. 404, 570 A.2d 619 (1990); *Reichard–Coulston, Inc. v. Revenue Appeals Bd.*, 102 Pa. Cmwlth. 227, 517 A.2d 1372 (1986), *appeal denied*, 517 Pa. 611, 536 A.2d 1335 (1987). Under this standard, Commonwealth Court erred in setting aside the order entered by the trial court.

The capitalization-of-income approach to tax appraisals is the most appropriate if not the only valid means of establishing fair market value of real estate when the rental income is below what would otherwise be the current market level but for a long-term commercial lease, because such long-term leases are an accepted aspect of commercial real estate transactions and their effects have a decisive impact on the price a buyer would pay for the affected property. To interpret the tax assessment statute as requiring valuation of property in hypothetical "unemcumbered form," as

Commonwealth Court did, is to ignore the economic realities of commercial real estate transactions. Under the rationale we followed in *Johnstown Associates*, it was proper for the trial court to utilize the capitalization-of-income approach in this case as a means of establishing fair market value.

Accordingly, we must reverse the order of the Commonwealth Court which set aside the order of the trial court. Order reversed and order of the Court of Common Pleas of Delaware County reinstated.

McDERMOTT and ZAPPALA, JJ., concur in the result.