In re Appeal of MARPLE SPRINGFIELD CENTER, INC., a Pennsylvania Corporation, from Decision of Board of Assessment Appeals of Delaware County, Pa, Relating to Premises Known as Marple Springfield Shopping Center, Route 320, West of Route 1, Marple Township, Delaware County, Pa, for Tax Years 1990 and 1991–Folio No. 25–00–04629–00. (Two Cases)

Appeal of MARPLE NEWTOWN SCHOOL DISTRICT, Marple Township and County of Delaware, Appellants. (Two Cases)

In re Appeal of MARPLE SPRINGFIELD CENTER, INC., a Pennsylvania Corporation, from the Decision of Board of Assessment Appeals of Delaware County, Pennsylvania Relating to the Premises Known as Marple Springfield Shopping Center, Route 320, West of Route 1, Marple Township, Delaware County, Pennsylvania, for the Tax Year 1991.

In re Appeal of MARPLE SPRINGFIELD CENTER, INC., a Pennsylvania Corporation, from the Decision of Board of Assessment Appeals of Delaware County, Pennsylvania, Relating to the Premises known as Marple Springfield Shopping Center, Route 320, West of Route 1, Marple Township, Delaware County, Pennsylvania, for the Tax Year 1991, Folio No. 25–00–04629–00.

Appeal of MARPLE SPRINGFIELD CENTER, INC., Appellant. (Two Cases).

Commonwealth Court of Pennsylvania.

Argued Oct. 3, 1994.
Decided Feb. 7, 1995.

Vram Nedurian, Jr., for appellants.

Walter T. ReDavid, for appellees.

Before SMITH and FRIEDMAN, JJ., and RODGERS, Senior Judge.

SMITH, Judge.

Marple Newtown School District, Marple Township, Delaware County (collectively Taxing Authority) and Marple Springfield Center, Inc. (Taxpayer) cross-appeal from the December 27, 1993 order of the Court of Common Pleas of Delaware County granting Taxpayer's appeals from the 1990 and 1991 tax assessments set by the Delaware County Board of Assessments (Board) for Taxpayer's property known as the Marple Springfield Shopping Center. The court determined that the Board failed to assess the property in accordance with Sections 1–20 of the Act of June 26, 1931 (Act), P.L. 1379, as amended, 72 P.S. §§ 5342–5350k, and revised the assessed value of the property.

The issues presented to this Court are whether the trial court erred by granting Taxpayer's appeal because the parties stipulated to the manner in which the Board set the assessments, the court found Taxpayer's evidence of valuation was not credible, and the Taxing Authority offered no expert testimony to provide a basis for the court's assessments; or whether the court abused its discretion in setting the assessments by extrapolating the property's 1989 fair market value to new improvements and applying the common level ratio.

## I.

Marple Springfield Shopping Center was built in Marple Township in 1964 and was assessed for real estate tax purposes at $416,200 for 1990 and $502,800 for 1991. The Board denied Taxpayer's appeal for reduction of the 1990 assessment and reduced the 1991 assessment to $416,200. Taxpayer appealed the Board's determinations to the trial court which held the appeals in abeyance pending a decision by the Pennsylvania Supreme Court regarding the trial court's June 29, 1989 order determining that the fair market value of the property was $7,000,000 for 1988 and $8,500,000 for 1989, and fixing the assessments at $343,000 for 1988 and $357,000 for 1989.

On March 10, 1992, the Supreme Court reversed this Court and held in *Appeal of*

*Marple Springfield Center, Inc.*, 530 Pa. 122, 607 A.2d 708 (1992), that the 1968 long-term lease which Taxpayer's predecessor-in-title entered into with Kleins, Inc.[1] presents a legally binding rent restriction which the Taxing Authority should have considered when valuing the property, and concluded that the trial court properly used the capitalization-of-income approach and considered the rent restrictions in establishing the fair market value of the property. The Supreme court reinstated the trial court's June 29, 1989 order.

The trial court conducted a de novo hearing on December 17, 1992. The only testimony was presented by Jeffrey C. Blank, a real estate broker and developer. Blank testified that he is one of three general partners of Marple ABC Associates (Marple ABC), a Delaware limited partnership; the Blank family owned approximately 44% of Marple ABC in 1990 and 65% in 1991. Marple ABC owns Taxpayer, a Pennsylvania corporation, which is a straw corporation holding title to the shopping center for Marple ABC. Blank valued the property at $5 million for 1990, $5.2 or 5.3 million for 1991, and $5.5 million for 1992. The valuation was based on an estimate of the 1990 worth of Marple ABC

and for 1991 and 1992, Blank based his estimated increases in value generally on the expiration of several long-term leases and construction of 17,500 square feet of stores on property not subject to the Kleins lease.

The parties submitted to the court a stipulation reciting Taxpayer's understanding of the method the Board used to assess its property for the tax years in question.[2] The trial court found that the Board failed to initially determine the property's fair market value and then apply the common level ratio but simply adjusted the 1989 assessment based upon the amount of new construction. This method resulted in assessments based upon the common level ratio of 4.2 or the ratio in existence for 1989 rather than the ratio which corresponded to the appropriate tax year. The court further determined that because the Taxing Authority did not offer the assessment records into evidence or any expert witness testimony with respect to fair market value, the assessments were not entitled to the prima facie validity they would otherwise be accorded. The court rejected Blank's testimony regarding the fair market value of the property as vague and lacking in specificity.[3]

---

1. The Supreme Court described the lease as follows:

   Kleins leased a large portion of the shopping center to act as the "anchor" store for the center. The original lease expires in 1994, but Kleins has options for an additional fifty years, or until 2044. The owner receives $1.47 per square foot under the Kleins lease, a rate which has remained constant throughout the term of the lease and will not change throughout the option periods if Kleins exercises the options. Kleins now sublets its leased space to others at $3.04 per square foot.
   Id. at 124, 607 at 708–9.

2. The stipulation provides in pertinent part:

   At the hearing, the question arose as to how the Board reached the assessment for the tax year 1990 of $416,200.00. I advised the court that it was my recollection and my notes disclosed that the Board had indicated to me that they set the assessment ratio by taking the $357,000.00 which the Supreme Court of Pennsylvania set for 1989, and dividing it by the available first floor square footage, which was 212,756 square feet. They then arrived at a dollar per square foot figure of $1.68. They then took the square footage of the new Circuit City building of 35,472 square feet, and arrived at the assessment of $59,200.00, which they

   added to the assessment that had been set by the Supreme Court and arrived at the assessment for 1990 of $416,200.00. There were no additions in 1991, so they kept the same assessment of $416,200.00 in 1991. In 1992, there were additional stores built which totaled 17,780 square feet. They multiplied it by the $1.68 per square foot, and they applied the same formula and arrived at an additional assessment of $29,400.00, but because of the change in ratio, graded that downward to $26,400.00 which made the assessment $442,-600.00 for 1992.
   In its decision, the trial court also noted that counsel for the parties stipulated as to the common level ratios in effect for the years in question and that the court should determine the tax assessments for the years 1992 and 1993 pursuant to Section 9 of the Act, 72 P.S. § 5350.

3. The court fixed the fair market value for 1990 by dividing the valid 1989 valuation by the square footage of the entire property and arriving at a figure which represented a value per square foot ($8,500,000 ÷ 212,756 = $39.95). The court multiplied the value per square foot figure by the square footage of the new Circuit City building to determine the fair market value of the Circuit City building ($39.95 × 35,472 = $1,417,106). The fair market value of the Circuit

The trial court found that the fair market value of the property for 1990 was $9,917,106 and assessment at the common level ratio of 3.7% was $366,932. Since there was no new construction in 1991, the court used the same fair market value of $9,917,106 and calculated the assessment at the common level ratio of 3.3% to be $327,264. In 1992, the shopping center added 17,870 square feet of floor space. The trial court again determined the fair market value of the new construction by multiplying the new floor space by the 1989 value per square foot figure (17,870 × $39.95 = $713,906) and adding the fair market value of the new construction to the 1991 fair market value. The court determined the fair market value for 1992 was $10,628,012 and assessment at the common level ratio of 3.3% was $350,724; and the fair market value for 1993 is $10,628,012 and assessment at the common level ratio of 3.2% is $340,096.

## II.

On appeal to this Court, the Taxing Authority argues that the trial court erred as a matter of law by refusing to dismiss Taxpayer's appeal because the parties stipulated to the bases of the assessments and Taxpayer failed to present credible, relevant evidence to rebut the validity of the assessments. The Taxing Authority also argues that the court sua sponte raised the issue of the bases for the Board's assessment determinations and abused its discretion in fixing the fair market value of the property. The Taxing Authority contends that the trial court abused its discretion because the record did not contain expert testimony as to cost, comparable sales or income approaches to valuation for the court's consideration.[4]

City building was then added to the 1989 valuation and the common level ratio for 1990 was applied.

4. This Court's scope of review in a real estate tax assessment appeal where the trial court has heard the matter de novo, is to determine whether the court's decision is supported by substantial evidence, is in accordance with law, or whether the court abused its discretion. *Fosko v. Board of Assessment Appeals, Luzerne County,* 166 Pa.Commonwealth Ct. 393, 646 A.2d 1275 (1994).

5. Procedures governing appeals before the Board are set forth in Section 8 of the Act, 72 P.S.

■ The procedure for determining the market value and assessment ratio to be applied to a property in an assessment appeal in counties of Second Class A are set forth in Sections 1–20 of the Act. Section 9(a), 72 P.S. § 5350(a), requires the Court to determine the market value of the property as of the date the appeal was filed with the Board and the applicable common level ratio. Market value is the price which a purchaser who is willing but not obliged to buy would pay to an owner who is willing but not obliged to sell. *Brooks Building Tax Assessment Case,* 391 Pa. 94, 137 A.2d 273 (1958).

■ The court is also required to determine the respective market value and common level ratio for each subsequent year which has been made a part of the appeal. Section 9(a.1) further provides:

The court, after determining the market value of the property pursuant to subsection (a)(1), shall then apply the established predetermined ratio to such value unless the corresponding common level ratio determined pursuant to subsection (a)(2) varies by more than fifteen percent from the established predetermined ratio, in which case the court shall apply the respective common level ratio to the corresponding market value of the property.[5]

The trial court reviews a tax assessment de novo and the well-established procedure in tax assessment proceedings is that the taxing authority shall first present its assessment record into evidence. *Deitch Co. v. Board of Property Assessment,* 417 Pa. 213, 209 A.2d 397 (1965).

§ 5349. Section 8(d.1) requires the Board to determine the property's fair market value as of the date of the taxpayer's appeal and the proper common level ratio; and Section 8(d.2) requires the Board to: "apply the established predetermined ratio to such value unless the common level ratio published by the State Tax Equalization Board on or before July 1 of the year prior to the tax year on appeal before the board varies by more than fifteen percent from the established predetermined ratio, in which case the board shall apply that same common level ratio to the market value of the property."

Once the assessment record has been presented into evidence, the valuation contained in the assessment record is presumptively valid and the burden shifts to the taxpayer to rebut the assessment's validity. *Walnut–Twelve Assoc. v. Board of Revision of Taxes of Philadelphia*, 131 Pa.Commonwealth Ct. 404, 570 A.2d 619, *appeal denied*, 525 Pa. 652, 581 A.2d 577 (1990). The taxing party prevails if the taxpayer fails to present credible, relevant evidence to rebut the presumed validity of the assessment, and the assessment loses the weight previously accorded to it once taxpayer produces sufficient proof of its invalidity. *Deitch.*

In the matter sub judice, the Taxing Authority was not automatically entitled to prevail when the trial court discounted Blank's valuation testimony because the Taxing Authority did not meet its burden to present a prima facie case. The Taxing Authority never submitted the Board's assessment records into evidence; and, contrary to its contentions before this Court, did not stipulate to the authenticity of the bases for the assessments but merely stipulated to the method the Board used in calculating the assessments. Furthermore, the trial court's determination that the assessments were invalid because they were incorrectly calculated is based upon substantial evidence.

With respect to the Taxing Authority's argument that the trial court sua sponte raised issues concerning the bases of the Board's assessments, Section 9 of the Act requires the court to determine the valuation and proper common level ratio to be used in calculating a tax assessment; and in its appeal to the trial court, Taxpayer challenged the assessments as, inter alia, "arbitrary, unreasonable, unjust, discriminatory and lacking in conformity" and "in complete disregard of the ratio between market value and assessed value set forth for the taxing districts." Ergo, the Taxing Authority was placed on notice that the validity of the bases of the Board's assessments was before the trial court.

The Taxing Authority's final arguments that the trial court erroneously fixed fair market value without considering tradi- tional approaches to valuation or the benefit of competent evidence in the record are equally without merit. The record demonstrates that the trial court's valuations of the property were based upon the 1989 valuation, calculated pursuant to the capitalization-of-income approach upheld by the Supreme Court, and the parties agreed to the applicable common level ratios and amount of new construction in the shopping center for the years in question.

### III.

Taxpayer argues that the trial court abused its discretion and committed an error of law when it included the square footage of the building occupied by Circuit City in its calculations of fair market value because Circuit City is located on land subject to the Kleins lease, from which Taxpayer receives no additional revenue. In *Appeal of Marple Springfield Center, Inc.*, the Supreme Court recognized the "economic realities" of commercial real estate transactions when it stated that:

> The capitalization-of-income approach to tax appraisals is the most appropriate if not the only valid means of establishing fair market value of real estate when the rental income is below what would otherwise be the current market level but for a long-term commercial lease, because such long-term leases are an accepted aspect of commercial real estate transactions and their effects have a decisive impact on the price a buyer would pay for the affected property.

*Id.* at 126, 607 A.2d at 710. *Compare Pennypack Woods Home Ownership Ass'n v. Board of Revision of Taxes*, 163 Pa.Commonwealth Ct. 80, 639 A.2d 1302 (1994) (when taxpayer has the power to amend restrictions on income and transferability of real estate by amending by-laws and articles of incorporation, restrictions are self-imposed and need not be considered when appraising the property).

The Supreme Court recognized that the Kleins lease presented a bona fide contractual obligation which, in effect, deflates the property's taxable value because Taxpayer cannot anticipate income at current market

levels. The Court also noted that "[t]here is no allegation that the 1968 long-term lease to Kleins was fraudulent in any way or that it was other than an unremarkable business transaction which was reasonable at the time, and we see no justification for ignoring its present existence and conclusive effect on the true market value of the shopping center." *Appeal of Marple Springfield Center, Inc.,* 530 Pa. at 125–6, 607 A.2d at 709.

Before the trial court, Blank testified that he is also the general partner of Marple XYZ Associates, a Pennsylvania partnership, which acquired the Kleins lease in 1987, and that the Blank family owns 88% of Marple XYZ. Since 1990, Marple XYZ has leased a portion of the property encumbered by the Kleins lease to Circuit City. Although Marple XYZ incurred some minor costs securing the foundation that the Circuit City building was erected upon, Circuit City financed the building and is subject to a long-term lease. At the end of the lease, the Circuit City building reverts to Marple XYZ; and the addition of the Circuit City store did not add value to Taxpayer's property because Marple ABC only receives $1.49 per square foot rent, while Circuit City pays a substantial amount of rent to Marple XYZ.

The trial court found that Blank misled the court in the 1989 proceedings regarding the ownership of the Kleins lease; and that the assignment of the lease, the common ownership of Marple ABC and Marple XYZ, and Jeffrey Blank's position as general partner in both partnerships, create something "other than an unremarkable business transaction." The court included the Circuit City property in its valuation calculation because it found that the Kleins lease "no longer has application to this case." A close scrutiny of the record presented to this Court, however, discloses no evidence to support the trial court's finding that the Kleins lease, as assigned to Marple XYZ, is no longer a valid encumbrance upon the property.[6]

The assignment and assumption agreement provides that the Kleins lease contains no restrictions on the right to make the assignment, and no evidence was presented to the trial court to support a finding that the current owner of the lease is an entity other than Marple XYZ or that the assignment was anything other than an unremarkable business transaction which was reasonable at the time. Blank's testimony that his family owned only 44% of Marple ABC when the lease was assigned to Marple XYZ in 1987 and that Taxpayer receives no additional income as the result of the existence of Circuit City is uncontradicted.

Because the current state of the record does not support a finding that the assignment nullified the economic reality of the encumbrance on the property, the trial court erred as a matter of law by including the square footage of the Circuit City store in its valuations. The order of the trial court is affirmed, however, to the extent it determined that the Board's tax assessments for 1990 through 1993 were invalid but reversed to the extent that it included Circuit City, being property encumbered by the Kleins/Marple XYZ lease, in its calculations of fair market value. This case is remanded to the court to enter an order calculating the assessment values of the property for 1990 through 1993 using the appropriate market values and applicable common level ratios consistent with this opinion.

RODGERS, Senior Judge, dissents in part and would affirm on the basis of the trial judge's opinion.

### ORDER

AND NOW, this 7th day of February, 1995, the order of the Court of Common Pleas of Delaware County is affirmed to the extent that it granted the assessment appeals of Marple Springfield Center, Inc., and reversed to the extent that it included the fair market value of the property encumbered by a legally binding rent restriction in its calcu-

---

**6.** Cf. *Trustees of University of Pennsylvania v. Board of Revision of Taxes of Philadelphia,* —— Pa.Commonwealth Ct. ——, 649 A.2d 154 (1994) (where a university owns property and is a general partner in partnership with which the university entered into a 99–year lease, it is the partnership and not the university which has the indicia of ownership during the term of the lease).

lation of fair market value. This case is remanded to the court for proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.