**TECH ONE ASSOCIATES, Appellant**

v.

**BOARD OF PROPERTY ASSESSMENT, APPEALS AND REVIEW of Allegheny County, West Mifflin Borough and West Mifflin Area School District.**

Commonwealth Court of Pennsylvania.

Argued May 6, 2009.

Decided June 1, 2009.

---

John A. Straka, III, Sewickley, for appellant.

Michael Adams, Pleasant Hills, for appellee, West Mifflin Borough.

John F. Cambest, Pittsburgh, for appellee, West Mifflin Area School District.

BEFORE: LEADBETTER, President Judge, McGINLEY, Judge, PELLEGRINI, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge PELLEGRINI.

Tech One Associates (Landowner) appeals an order of the Court of Common Pleas of Allegheny County (trial court) assessing the value of its property for tax years 2001 through 2005. The issue on appeal is whether buildings and other improvements on the property made and owned on land leased property must be included in the assessed value of the property. The trial court determined that those improvements were to be included, and finding no fault with the trial court's determination, we affirm.

Landowner owned 47.5 acres of undeveloped land in West Mifflin Borough, Allegheny County, Pennsylvania. In 1989, it entered into a 50–year lease agreement with Terra Associates (Lessee) covering

this land with an annual rent of $665,000. Landowner gave Lessee the right to improve the land, own what it built, and assign its interests at any time. Under the lease agreement, Lessee pays all real estate taxes and other related taxes for the entire property.

On the land in the early 1990s, Lessee constructed a one-story shopping center now known as Century Square, that has 415,613 square feet of rentable area with 29 tenant spaces. Lessee, or others pursuant to agreements with Lessee, have also built a multi-screen movie theater building and a restaurant building on the land.

In 2001, the Allegheny County Board of Property Assessment, Appeals and Review (Board) assessed the fair market value of Landowner's property for 2001 at $30,984,700. It included the land (based on Landowner's leased fee, i.e., the rent it received) and the buildings and improvements in its assessment. Landowner appealed, and a hearing was held before the Board of Viewers.[1]

At that hearing, Anthony Barna (Barna), a licensed real estate appraiser, testified for Landowner stating that in making his appraisal of the property for the tax years in question, he recognized the "economic reality" of the impact of the long-term land lease between Landowner and Lessee in using the capitalization-of-income approach to value the property.[2] He stated that the income capitalization method established a capitalization rate by assessing the property and surrounding area as well as comparable properties, and any reversion interest in the property with the annual income of the property divided by the capitalization rate to obtain the value of the land. He established a capitalization rate of seven percent, and based on the annual rent Landowner received, the value of Landowner's lease fee interest in the land was $9,500,000 for each of the four tax years, 2001 through 2005.[3] He placed no value on the buildings because the economic reality of the long-term land lease held by Landowner, the party being assessed, was that it received no economic benefit from the buildings constructed on the land.

The taxing bodies, Borough of West Mifflin and the School District of West Mifflin, presented the expert testimony of Mark Ackerman (Ackerman) who used the income approach in arriving at his values. His appraisal value included the lease fee interest held by Landowner and the value of the improvements which it did not own. He testified that the values of the com-

1. The General County Assessment Law, Act of May 22, 1933, P.L 853, *as amended*, 72 P.S. § 5020–518.1(c), allow for the courts of common pleas to appoint the Board of Viewers to hear tax assessment appeals.

2. Barna testified that he did his appraisal based on this Court's holding in *In re Appeal of Marple Springfield Center, Inc. (Marple Springfield II)*, 654 A.2d 635 (Pa.Cmwlth. 1995) (which followed our Supreme Court's holding in *In re Appeal of Marple Springfield Center, Inc. (Marple Springfield I)*, 530 Pa. 122, 607 A.2d 708 (1992)) (requiring an appraiser to utilize the capitalization-of-income approach to establish fair market value of real estate when rental income is below what would otherwise be current market levels due to a long-term commercial lease).

3. Valuation of Anthony C. Barna, Landowner's Expert:

| Year | Land (Leased Fee) | Improvements (Leasehold) | Total |
|------|-------------------|--------------------------|-------|
| 2001 | 9,500,000.00 | Not Valued | 9,500,000.00 |
| 2002 | 9,500,000.00 | Not Valued | 9,500,000.00 |
| 2003 | 9,500,000.00 | Not Valued | 9,500,000.00 |
| 2004 | 9,500,000.00 | Not Valued | 9,500,000.00 |
| 2005 | 9,500,000.00 | Not Valued | 9,500,000.00 |

bined interest ranged from $36,130,000 in 2001 to $22,600,000 in 2004. He stated that he used a highest and best use evaluation and appraisal for a retail shopping center; however, his capitalization of income analysis of the leased fee concluded a value similar to that of Landowner's expert and was just $200,000 less.[4]

■ The Board of Viewers concluded that *Marple Springfield I* controlled the outcome of this matter and, therefore, accepted Barna's fair market value of $9,500,000 for the property owned in leased fee by Landowner. No value was assigned to the buildings. The taxing bodies filed objections with the trial court and oral arguments were heard. The trial court then issued an opinion and order rejecting the Board of Viewers' recommendation and rejecting the application of the *Marple Springfield I* and *Marple Springfield II* decisions. The trial court found that Landowner's approach to value violated the Uniformity Clause of the Pennsylvania Constitution and the prohibition against creating exemptions not provided for in the Pennsylvania Constitution, an issue not discussed in either *Marple Springfield I* or *Marple Springfield II*. Instead, it accepted the value of the property for each of the tax years offered by the taxing bodies' expert who included the value of the improvements in his opinion of fair market value. This appeal by Landowner followed.[5]

On appeal, Landowner contends that trial court erred (1) because it was at variance with our Supreme Court's decision in *Marple Springfield I* where it holds that a long-term lease value is not subject to being assessed; (2) in holding that buildings built on the land lease are subject to taxation because no statutory authority exists for imposing a real estate tax assessment on a lessee's leasehold interest; and (3) in finding that the methodology used by Landowner's expert resulted in a constitutional violation of the Uniformity Clause of the Pennsylvania Constitution because our Supreme Court was aware of that clause at the time its decision came down and saw fit not to include it in its decision.

I.

■ In *Marple Springfield I*, the taxpayer was the owner of land on which a shopping center was built in 1964. In 1968, the taxpayer's predecessor in title entered a long-term lease for the entire property which, with renewals, expired in 2044, and had values that were well below market rates which would not change during the term of the lease. There was no mention that the lessee was responsible for real estate taxes. The property was assessed based on the market rent that lessee received from its subtenants, not the contract amount the lessee paid to the taxpayer/landowner.[6] The taxpayer chal-

4. Valuation by Mark D. Ackerman, Taxing Bodies' Expert:

| Year | Land (Leased Fee) | Improvements (Leasehold) | Total |
|------|-------------------|--------------------------|-------|
| 2001 | 9,300,000.00 | 26,685,000 | 35,985,000 |
| 2002 | 9,300,000.00 | 26,685,000 | 35,985,000 |
| 2003 | 9,300,000.00 | 19,350,000 | 28,650,000 |
| 2004 | 9,300,000.00 | 13,300,000 | 22,600,000 |
| 2005 | 9,300,000.00 | 21,350,000 | 31,650,000 |

5. Our scope of review in a tax assessment appeal is limited to determining whether the trial court abused its discretion, committed an error of law, or made findings of fact unsupported by substantial evidence. *First Korean Church of New York, Inc. v. Montgomery*

*County Board of Assessment Appeals,* 926 A.2d 543 (Pa.Cmwlth.2006).

6. As we explained in footnotes in *Appeal of/Property of Cynwyd Investments,* 679 A.2d

lenged its real estate tax assessments contending that property should be valued based on the rent that it received, not the fair market rent. Our Supreme Court agreed, holding that "the economic realities of commercial real estate transactions" had to be taken into consideration when valuing property and stating:

The capitalization-of-income approach to tax appraisals is the most appropriate if not the only valid means of establishing fair market value of real estate when the rental income is below what would otherwise be the current market level but for a long-term commercial lease, because such long-term leases are an accepted aspect of commercial real estate transactions and their effects have a decisive impact on the price a buyer would pay for the affected property. To interpret the tax assessment statute as requiring valuation of property in hypothetical unencumbered form, . . . ., is **to ignore the economic realities of commercial real estate transactions.** (Emphasis added.) [7]

*Marple Springfield I*, 530 Pa. at 126–127, 607 A.2d at 710. *See also In re Assid*, 842 A.2d 995 (Pa.Cmwlth.2004).

*Marple Springfield I*, however, does not apply to this appeal because of different economic and legal "realities." The economic difference between this appeal and *Marple Springfield I* is that *Marple Springfield I* made no mention that the lessee was responsible for all real estate taxes. If a lessee is responsible for all real estate taxes, the landowner's economic reality would not change because if the value of the leased premises increased for whatever reason,—new buildings went up or market rents increased—the lessee would solely be responsible for the value of the landowner's interest in the real property, not the landowner, who would receive the bargain for the amount under the lease, without deductions for taxes. The legal reality is also different because what was involved in *Marple Springfield I* was the value of the shopping center, land and buildings, not, as here, where Landowner is contending that those buildings should remain untaxed because they are built on leased property which is akin to receiving an exemption from taxes.

## II.

■ That leads us to Landowner's central contention—whether the leasehold interests are not taxable because they are not real estate under the General County Assessment Law which provides that only real estate can be subject to taxation. It argues that leasehold interests are not real estate because a lessee only has the right to use and occupy real estate for a stated term and under certain conditions. Even though buildings that were worth millions of dollars were built on the leasehold, absent specific legislative authority to impose real estate taxation upon the leasehold, it argues that those buildings cannot be taxed. *Independent Oil and Gas Association of Pennsylvania v. Board of Assess-*

304, 310 (Pa.Cmwlth.1996), "Market rent is [t]he rental income that a property would most probably command in the open market; indicated by current rents paid and asked for comparable space as of the date of the appraisal." American Institute of Real Estate Appraisers, The Dictionary of Real Estate Appraisal, p. 71 (1984). Contract rent is "[t]he actual rental income specified in a lease." Id.

7. Our Supreme Court in *Marple Springfield I* noted that there was no suggestion that the lease was fraudulent in any way, and that it was an otherwise unremarkable business transaction reasonable at the time it was entered. We understand that to mean that if a lease is entered into by affiliated entities or arrangements are made that would present a false and fraudulent view of the economic realities, the contract rent could obviously not be used in valuing the property.

**1230** ■ 

*ment Appeals of Fayette County,* 572 Pa. 240, 243, 814 A.2d 180, 182 (2002). "[I]n Pennsylvania, the power to tax is statutory and must be derived from [an] enactment of the General Assembly."

Section 204(a) of the General County Assessment Law, 72 P.S. § 5020–204(a), places on the assessors the duty to value all "objects of taxation" providing that:

> (a) It shall be the duty of the several elected and appointed assessors, ... to rate and value all objects of taxation, ... according to the actual value thereof, and at such rates and prices for which the same would separately bona fide sell.... In arriving at the actual value, all three methods, namely, cost (reproduction or replacement, as applicable, less depreciation and all forms of obsolescence), comparable sales and income approaches, must be considered in conjunction with one another. Except in counties of the first class, no political subdivision shall levy real estate taxes on a county-wide revised assessment of real property until it has been completed for the entire county.

■ Notably, it provides that the cost approach to valuation must be used which is an approach only applicable to valuation of improvements to real estate and not just land itself.[8]

"Objects of taxation" are set forth in Section 201 of the General County Assessment Law, 72 P.S. § 5020–201, which provides that "all real estate" is to be assessed and subject to taxation. It describes real estate as:

> (a) All real estate, to wit: House, house trailers and mobile homes *buildings per-*

*manently attached to land* or connected with water, gas, electric or sewage facilities, *buildings,* lands, lots of ground and ground rents, trailer parks and parking lots, mills and manufactories of all kinds, furnaces, gorges, bloomeries, distilleries, sugar houses, malt houses, breweries, tan yards, fisheries, and ferries, wharves, all office type construction of whatever kinds, that portion of a steel, lead aluminum or like melting and continuous casting structures which enclose, provide shelter or protection from the elements for the various machinery, tools, appliances, equipment, materials or products involved in the mill, mine, manufactory or industrial process, *and all other real estate not exempt by law from taxation.* (Emphasis added.)

Through these provisions, the General Assembly directed the assessors to assess real estate—including lands and buildings. To make that determination, who owns it and what are the ownership interests in the land—a fee simple, a fee simple determinable, a leasehold interest or month-to-month lease are irrelevant. Once the assessment is made, who pays the real estate taxes—the landowner or the tenant or subtenant—is not the concern of the taxing body but is determined by the parties in the terms of the lease or by some other private arrangement.

### III.

Landowner also contends that the trial court erred in finding that the Uniformity Clause contained in Article 8, Section 1 of the Pennsylvania Constitution would be violated under its view of what is the effect

---

8. As this Court explained in *Appeal of Property of Cynwyd Investments,* 679 A.2d at 308, n. 2: "The cost approach values the property by considering the reproduction or replacement cost of the property, less depreciation and obsolescence. 72 P.S. § 5020–402. Specifically, this method entails (1) estimating the value of the land assumed vacant and available for its highest and best use; (2) estimating the reproduction cost or cost new of the facility; (3) subtracting from the latter amount the facility's depreciation; and (4) adding to this depreciated balance the value of the land estimated in (1) above."

of a land lease on the real estate tax assessment. That provision provides, in relevant part: "All taxes shall be uniform, upon the same classes of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Landowner contends that uniformity is not violated if some concrete justification can be discerned for treating a relevant group of taxpayers as members of distinguishable classes to differing tax burdens. *City of Harrisburg v. School District of Harrisburg*, 675 A.2d 758 (Pa.Cmwlth.1996), *reversed on other grounds*, 551 Pa. 295, 710 A.2d 49 (1998). Landowner argues that the distinguishable class consisting of those properties that are encumbered by long-term ground leases that affect the income potential of that real estate has already been defined by our Supreme Court in *Marple Springfield I*. Landowner further argues that the trial court ignored that the Uniformity Clause existed at the time *Marple Springfield I* was decided by our Supreme Court.

Initially, we point out that the fact that the Uniformity Clause existed at the time our Supreme Court decided *Marple Springfield I* is of no legal import because the uniformity issue was not addressed in that decision. Also, it did not inferentially recognize that leased property and non-leased property could be treated differently for real estate tax purposes; all that it addressed is what revenue stream should be used in the income approach to value. When it addressed uniformity, our Supreme Court emphatically stated that a tax must be applied upon similar kinds of property with substantial equality of the tax burden on all members of the class. *Amidon v. Kane*, 444 Pa. 38, 51, 279 A.2d 53, 60 (1971). *See also Truck Terminal Motels of America, Inc. v. Berks County Board of Assessment Appeals*, 127 Pa. Cmwlth. 408, 561 A.2d 1305 (1989). For example, while there are substantial differ-

ences between commercial or industrial real estate and residential real estate, to tax them differently has been held to violate the Uniformity Clause. *Appeal of Massachusetts Mutual Life Insurance Company*, 426 Pa. 566, 235 A.2d 790 (1967); *McKnight Shopping Center v. Board of Property Assessment*, 417 Pa. 234, 209 A.2d 389 (1965); *Deitch Company v. Board of Property Assessment*, 417 Pa. 213, 209 A.2d 397 (1965). As explained above, the real estate—land and buildings—are the objects of taxation and because different parties own them is insufficient not to assess all "objects of taxation." Moreover, we would also be adopting a class of buildings that would be exempt from taxation, which would similarly violate Article VIII, Section 2 of the Pennsylvania Constitution that only allows real estate used and occupied by "purely public charities" to be exempt from taxation.

Accordingly, for the reasons set forth above, the well-reasoned decision of the Honorable Stanton Wettick of the Court of Common Pleas of Allegheny County is affirmed.

### ORDER

AND NOW, this 1st day of June, 2009, the order of the Court of Common Pleas of Allegheny County, dated December 28, 2007, is affirmed.

DISSENTING OPINION BY Judge McGINLEY.

I must respectfully dissent.

It is well settled that in a long-term leased property scenario, the "income approach" to valuation must be considered and the implications of the long-term lease must be considered when an assessment of property is made. *Marple Springfield*. In the landmark case *Marple Springfield*, our Supreme Court held that fair market value is to be determined by the price a

buyer will pay in accordance with the "economic realities" of commercial real estate transactions. The Supreme Court explained: "To interpret the tax assessment statute as requiring valuation of property in hypothetical unencumbered form . . . . is to ignore the economic realities of commercial real estate transactions." *Marple Springfield*, 530 Pa. at 126–127, 607 A.2d at 710.

In *In re Assid*, 842 A.2d 995 (Pa. Cmwlth.2004), this Court reversed a trial court when faced with a very similar fact pattern. There the trial court ignored the economic realty of a long-term commercial lease which encumbered the property.[1]

In *Assid*, Dr. and Mrs. Assid (Assids) owned a 339–acre tract of land in Armstrong County (county) which they leased on April 1, 1999, to Spring Church. The lease term was for an initial five years, with an option for four consecutive five-year renewals with a right of reversion to the taxpayers at the end of the lease. Pursuant to the lease, Spring Church constructed an 18–hole golf course and club house on approximately 100 acres of the property. The annual rent was $60,000 or 10% of the gross profits from all operations, whichever amount was greater.

The Assids received a notice of appraisal from the Armstrong County Board of Assessment setting the fair market value of the property at $1,346,390. Taxpayer appealed. At trial the county's appraiser testified that he used the cost approach and did not consider the effect of the lease on the value of the property.

The Assids' expert, on the other hand, valued the property as encumbered by the long-term lease. He used the income approach to value and capitalize the net operating income from the lease to arrive at a present market value. He then added that to the Assids' reversionary value in the property and arrived at a fair market vale of $555,900. The trial court rejected this value and accepted the county's valuation.

This Court reversed because the trial court was required to "determine the fair market value of [the Assids'] property . . . by considering the impact of the [long-term commercial] Lease, and it failed to do so." *Assid*, 842 at 1001.

In the present controversy, the trial court, like the trial court in *Assid*, ignored the impact of the long-term lease. However, this case is slightly different from *Assid*. Here, the trial court accepted Mr. Ackerman's use of the income approach. However, instead of considering the long-term lease and valuing only the Taxpayer's lease fee interest, the trial court found that the Tenant's leasehold interest must also be valued. I believe this was error.

*Marple Springfield* and *Assid* were based on the underlying principle that the proper inquiry in any valuation should focus on the market value of the property exposed for sale "as is." *See* Assessment Law and Procedure in Pennsylvania, Bert M. Goodman, (2008 Ed.) at 199–200. Since a property is only worth what an investor-buyer could earn from it, a property encumbered by a long-term lease with a fixed rent must be valued based on the income it will yield to a purchaser. *Id.* As Professor Goodman explains, in the long-term lease situation, "[t]he owner . . . should be taxed upon the current income from the property (rent) and the present

---

1. An "encumbrance" is a claim or liability that is attached to property or some other right that may lessen its value, such as a lien or mortgage. Black's Law Dictionary 547 (7th Ed.1999). Importantly, an encumbrance will not defeat the transfer of possession, but it remains after a property or right is transferred. So, in this case, if Taxpayer sold the property, the transfer of possession and title would be sold subject to the long term commercial lease.

value of the reversion of the building at the end of the lease." *Id.* at 200.

In the present scenario, a prospective buyer would be limited by what he could earn from the property for the duration of the lease because of the long-term lease encumbrance. The prospective buyer's fee simple ownership interest, like Taxpayer's, would be limited in that he is not free to sell the property unencumbered and is powerless to unilaterally void the encumbrance. Given the economic reality of the long-term fixed rent and the limitations on transferability, the valuation must take into consideration the encumbrance of the long-term lease in order to fairly value the property.

This is so, even if, under the trial court's example, a tenant builds a replica of the "Taj Mahal or Empire State Building." Trial Court Opinion at 3–4. If there is a long-term commercial lease in effect this negatively restricts the owner's fee simple interest. That economic reality must be taken into account when valuing the property. A prospective buyer could, at most, earn the fixed annual rent of $665,000 until the expiration of the lease. Only after could the prospective purchaser sell the property outright, including the buildings and improvements. Thus, the trial court was required to take into consideration Taxpayer's leased fee interest and the fact that the then-current economic benefit to Taxpayer was its receipt of a fixed annual rent for $665,000 per year for fifty years. So long as the lease was an arms-length transaction and entered into in good faith, the long-term lease and its implications must be considered when valuing the property.

Because an owner of property must be taxed solely upon the fair market value of the property as it presently exists, not upon the hypothetical unencumbered value, I believe that the trial court erred when it included the value of the buildings and improvements in the assessment. *Marple Springfield.* The trial court was required to value the Taxpayer's interest in the property at the income value of its cash flow plus reversionary value of the realty which is precisely what Taxpayer's expert, Mr. Barna, did.

Because the trial court erred when it failed to employ the method of valuation espoused in *Marple Springfield* and *Assid,* I would reverse.[2]

Judge LEAVITT joins in this dissent.

---

2. I must also disagree with the majority's analysis of the Uniformity Clause because I do not agree that a property encumbered by a 50–year long term lease is similarly situated to or comparable to a property with no such restriction. The actual current market values of the two types of properties will be different. The market value of a property encumbered by a long-term lease (an encumbered fee) will be different than a similar property free and clear of all encumbrances. A potential purchase will be, in the first instance, purchasing an encumbered fee and will logically discount the property because of the encumbrance. Assessment Law and Procedure in Pennsylvania, Bert M. Goodman, (2008 Ed.) at 200.