**ELMHURST GROUP, Appellant**

v.

**Board of Property Assessment Appeals and Review.**

Commonwealth Court of Pennsylvania.

Argued April 4, 2011.

Decided May 3, 2011.

Stephen M. Elek, Pittsburgh, for appellant.

M. Janet Burkardt, Pittsburgh, for appellee Moon Area School District.

BEFORE: PELLEGRINI, Judge, and SIMPSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge PELLEGRINI.

Elmhurst Group (Taxpayer) appeals from an order of the Court of Common Pleas of Allegheny County (trial court) finding that taxes were required to be paid on buildings that it leased from the Allegheny County Industrial Development Authority (Authority). For the reasons that follow, we affirm the trial court's decision.

This appeal involves four commercial office buildings that were constructed and are situated on four parcels of land located at 100 Airside Drive in Coraopolis, Allegheny County, Pennsylvania, in the Moon Area School District. The land is owned by the Authority and is leased to Taxpayer pursuant to a lease agreement entered into by the parties on June 25, 1999. Under that agreement, each of the four parcels of land is leased from the Authority for an original term of 49 years with five renewal terms of 10 years each for a total of 99 years. Under this agreement with the Authority, the office buildings become the property of the Authority upon termination of the lease. Under each lease, Taxpayer is responsible for all costs relating to maintaining and improving the property, including the payment of real estate taxes.

Taxpayer took an appeal from the Board of Property Assessment Appeals and Review's (Board) 2007 assessment of the four parcels[1] of real estate contesting the taxability of the office buildings under *In re Appeal of Marple Springfield Center, Inc.*, 530 Pa. 122, 607 A.2d 708 (1992). In *Marple Springfield,* the owner was also the taxpayer who paid the real estate taxes for both the property it owned and the shopping center that was built on that property and was leased to a third party. The taxpayer's predecessor-in-title entered into a long-term lease for 30 years with an option for an additional 30 years with lessees who leased a large portion of the shopping center and provided rent to the taxpayer. Taxpayer appealed the decision of the assessment appeal board denying its petition to reduce its 1988 and 1989 real estate tax assessments on the property and shopping center. The trial court reduced the tax assessment relying upon the capitalization-of-income approach. On appeal, our Supreme Court held that:

> The capitalization-of-income approach to tax appraisals is the most appropriate if not the only valid means of establishing fair market value of real estate when the

---

1. The buildings were assessed as follows: parcel "A" (Lot and Block 696–D–396 ELM1) was valued at $4,410,000 and assessed for tax purposes at $501,000; parcel "B" (Lot and Block 696–D–396 ELM2) was valued at $8,626,200 and assessed for tax purposes at $454,300; parcel "C" (Lot and Block 696–D–396 ELM4) was valued at $10,495,600 and assessed for tax purposes at $500,000; and parcel "D" (Lot and Block 696–D–396 ELM3) was valued at $4,841,800 and assessed for tax purposes at $467,000.

rental income is below what would otherwise be the current market level but for a long-term commercial lease, because such long-term leases are an accepted commercial real estate transaction and their effects have a decisive impact on the price a buyer would pay for the affected property. To interpret the tax assessment statute as requiring valuation of property in hypothetical unencumbered form, ... **is to ignore the economic realities of commercial real estate transactions.**

*Id.*, 530 Pa. at 126–127, 607 A.2d at 710. (Emphasis added.) If the buildings in this case were taxable, Taxpayer contended that the buildings were over assessed. The appeal was assigned to the Board of Viewers, and a hearing was held before a Special Master of the Board of Viewers at which both the Taxpayer and the Moon Area School District Taxing Authority offered expert real estate appraisers who gave their respective opinions of value.

Without making findings of fact, the Special Master accepted Taxpayer's appraiser's opinion of value and reduced the assessment accordingly,[2] but noted that whether the buildings were taxable under *Marple Springfield* was beyond the scope of the Board of Viewers and herself as the Special Master, and the law was unsettled due to this Court's decision in *Tech One Associates v. Board of Property Assessment, Appeals and Review*, 974 A.2d 1225 (Pa.Cmwlth.2009), *petition for allowance of appeal granted*, 607 Pa. 323, 6 A.3d 499 (2010).

While the Moon Area School District Taxing Authority did not appeal the reduction in the assessment for the buildings, Taxpayer filed objections to the Special Master's report with the trial court alleging that its value in the buildings was not taxable under *Marple Springfield*, but only the ground lease and the residual value that the buildings might have in 60 years when the lease ended was taxable. In supplementary objections to the report, Taxpayer asserted that the parties had stipulated that the subject property was owned by the Authority and under the statutes in this Commonwealth,[3] no taxes were owed or assessable against property owned by the Authority.

■ The trial court found that *Marple Springfield* did not apply because the facts of this case were almost identical to those in *Tech One Associates* where we held that buildings and other improvements on

---

**2.** She found that the fair market value of the four properties was as follows for tax years 2007, 2008 and 2009:
Parcel "A"—$4,151,400
(original value: $4,410,000)
Parcel "B"—$9,137,000
(original value: $8,626,200)
Parcel "C"—$13,906,000
(original value: $10,495,600)
Parcel "D"—$5,870,000
(original value: $4,841,800)

**3.** *See* Section 15 of the Economic Development Financing Law, Act of August 23, 1967, P.L. 251, *as amended*, 73 P.S. § 385. That section provides:
The effectuation of the authorized purpose of authorities created under section 4 of this act and the financing authority created under section 6.1 of this act shall and will be in all respects for the benefit of the people of the Commonwealth of Pennsylvania, for the increase of their commerce and prosperity, and for the improvement of their health and living conditions; and, since they will as public instrumentalities of the Commonwealth be performing essential governmental functions in effectuating such purposes, authorities and the financing authority shall not be required to pay any taxes or assessments upon any property acquired or used by them for such purposes, and the bonds issued by any authority or by the financing authority, their transfer and the income therefrom (including any profits made on the sale thereof) shall at all times be free from taxation with the Commonwealth of Pennsylvania.

leased property had to be included in the assessed value of the property when the lessee paid taxes because the economic realities were different when the lessor paid the taxes. The trial court found the claimed exemption was without merit as well because the Authority did not file for an exemption, and the Board was never asked to decide whether the property was exempt. The trial court then entered an order overruling Taxpayer's exceptions to the recommendations of the Special Master regarding the fair market values of the four parcels for tax years 2007–2009.[4] This appeal by Taxpayer followed.[5]

■ Relying upon *Marple Springfield,* Taxpayer contends that the trial court

erred in finding that *Tech One Associates* controlled and that it had to pay taxes on the buildings situated on the land[6] leased from the Authority. *Tech One Associates* is factually similar to this case because the owner of the property did not pay for the taxes on the leased property; rather, like here, the lessee paid for all real estate taxes and other related taxes for the entire property. In that case, the landowner also argued that *Marple Springfield* controlled; however, we stated:

> Marple Springfield I, [7] however, does not apply to this appeal because of different economic and legal "realities." The economic difference between this appeal and *Marple Springfield I* is that

4. Taxpayer also argued that the Special Master did not provide any explanation for the theory or method of valuation that was adopted in reaching her decision and did not state which facts she relied upon in arriving at her valuations. The trial court initially noted that for each parcel, the Special Master recommended the adoption of Taxpayer's expert's valuation of the property, and Taxpayer did not file objections to the Special Master's report asking the trial court to consider whether its own expert's value was too low. On appeal, Taxpayer makes the same argument, and we also do not understand Taxpayer's argument.

5. Our scope of review of the trial court's order is limited to determining whether the trial court abused its discretion, committed an error of law or whether the decision is unsupported by the evidence. *Expressway 95 Business Center, LP v. Bucks County Board of Assessment and Bensalem Township School District,* 921 A.2d 70 (Pa.Cmwlth.2007).

6. We note that Section 201 of the General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. § 5020–201, provides, in relevant part, that: "The following subjects and property shall, as hereinafter provided, be valued and assessed, and subject to taxation for all county, city, borough, town, township, school and poor purposes at the annual rate: (a) All real estate, to wit: ...

buildings, lands, lots of ground and ground rents, ... lots, mills and manufactories of all kinds, ... No office type construction of whatever kind shall be excluded from taxation but shall be considered a part of real property subject to taxation." The term "real estate" is not defined by the General County Assessment Law. The General Assembly has defined "real estate" in other acts to include the leasehold. For example, Section 2 of the Real Estate Licensing and Registration Act, Act of February 19, 1980, P.L. 15, *as amended,* 63 P.S. § 455.201, defines real estate as "[a]ny interest or estate in land, whether corporeal, incorporeal, freehold or nonfreehold, whether the land is situated"; Section 1 of the Uniform Planned Community Act, 68 Pa. C.S. § 5103, however, defines real estate as: "Any fee, leasehold or other estate or interest in, over or under land, including structures, fixtures and other improvements and interests which by custom, usage or law pass with a conveyance of land though not described in· the contract of sale or instrument of conveyance. The term includes parcels with or without upper or lower boundaries and spaces that may be filled with air or water." *See also* 68 Pa.C.S. § 4103; 74 Pa.C.S. § 1701.

7. There is a *Marple Springfield II* which followed our Supreme Court's holding in *Marple Springfield I. See In re Appeal of Marple Springfield Center, Inc. (Marple Springfield II),* 654 A.2d 635 (Pa.Cmwlth.1995).

*Marple Springfield I* made no mention that the lessee was responsible for all real estate taxes. If a lessee is responsible for all real estate taxes, the landowner's economic reality would not change because if the value of the leased premises increased for whatever reason—new buildings went up or market rents increased—the lessee would solely be responsible for the value of the landowner's interest in the real property, not the landowner, who would receive the bargain for the amount under the lease, without deductions for taxes. The legal reality is also different because what was involved in *Marple Springfield I* was the value of the shopping center, land and buildings, not, as here, where Landowner is contending that those buildings should remain untaxed because they are built on leased property which is akin to receiving an exemption from taxes.

*Tech One Associates,* 974 A.2d at 1229. This case is even more attenuated from *Marple Springfield I* because it is not the landowner who is claiming that the "economic realities" are not being met but the taxpayer/lessee. Having agreed in the lease to pay the real estate taxes on its buildings and having its value of the buildings accepted by the trial court, the trial court certainly took into consideration Taxpayer's "economic realities."

Accordingly, because *Tech One Associates* controls the outcome of this appeal, the order of the trial court is affirmed.

Judge McCULLOUGH did not participate in the decision in this case.

### ORDER

AND NOW, this 3rd day of May, 2011, the order of the Court of Common Pleas of Allegheny County, dated October 19, 2009, is affirmed.

DISSENTING OPINION BY Senior Judge FRIEDMAN.

I respectfully dissent. The majority holds that, where property is subject to a long-term commercial lease, the value of the property for tax purposes depends on whether the taxpayer is the owner or the lessee of the property. For the following reasons, I cannot agree that the identity of the taxpayer dictates a property's value for tax purposes.

*In re Appeal of Marple Springfield Center, Inc.,* 530 Pa. 122, 125, 607 A.2d 708, 709 (1992) (emphasis added), our Supreme Court stated:

The statutory foundation for tax assessments is ... fair market value: [T]he General County Assessment Law [1] requires that taxable property be valued "according to the actual value thereof, and at such rates and prices for which the same would separately bona fide sell." 72 P.S. § 5020–402. We have interpreted "actual value" to mean "a price which a purchaser, willing but not obliged to buy, **would pay an owner,** willing but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied."

Whether the taxpayer is the owner or a lessee, the value of property subject to a long-term commercial lease, for tax purposes, is the price that a willing buyer would pay to the **owner** of the property. This price would not change where the taxpayer happens to be the lessee.

In *Tech One Associates v. Board of Property Assessment, Appeals and Review,* 974 A.2d 1225 (Pa.Cmwlth.2009) *(en banc ), appeal granted,* 607 Pa. 323, 6 A.3d

---

1. Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. § 5020–1– § 5020–602.

499 (2010), property was subject to a long-term commercial lease, but the majority of this court declined to follow *Marple Springfield* because the taxpayer was the lessee, not the owner. In his dissent, Judge McGinley, joined by Judge Leavitt, pointed out that the proper inquiry in any valuation is what a prospective buyer would pay the owner for the property. *Tech One Associates*, 974 A.2d at 1232 (McGinley, J., dissenting).

Because I agree with the dissenting view of Judge McGinley and Judge Leavitt in *Tech One*, I would reverse.